*In re* CUSTODY OF LYNNETTE PETERSON (Raymond Jadrych *et al.*, Petitioners-Appellants, v. James Peterson, Respondent-Appellee).

First District (4th Division)  No. 84—1815

Opinion filed December 20, 1984.

ROMITI, J., dissenting.

Mark Patrick Morgan, of Midlothian, and Law Office of Patrick S. Moore, of Chicago (Patrick S. Moore, of counsel), for appellants.

Edward J. Burt and John Cossidente, Jr., both of Urban & Burt, of Oak Forest, for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

This appeal arose from a dismissal by the trial court of a petition for modification of judgment brought by petitioners, Raymond and Patricia Jadrych, who are the maternal grandparents of the minor

child, Lynnette Peterson. The grandparents sought to obtain custody of the minor child, who is the subject of this dispute. The trial court granted the natural father's motion to dismiss the grandparents' petition. On appeal, we are asked to consider (1) whether the trial court improperly denied petitioner's motion for a change of venue, and (2) whether the grandparents had standing to bring a petition for modification of custody under section 601(b)(2) of the Illinois Marriage and Dissolution of Marriage Act (IMDMA) (Ill. Rev. Stat. 1981, ch. 40, par. 601(b)(2)).

We affirm in part and reverse in part.

Petitioners' daughter, Felicia Peterson, the child's mother, was divorced from James Peterson, the child's father, on February 23, 1983. Lynnette was 1½ years of age at the time of the divorce. Felicia and James were married on September 6, 1980. Lynnette was born on August 24, 1981. Felicia, James, and Lynnette lived in the home of Felicia's parents, the petitioners, from the time of their marriage until May 1982. There is some dispute as to whether Lynnette returned to live with the petitioners in November 1982, which was prior to the divorce of her parents, or in early 1983 after the divorce.

The divorce judgment entered in February 1983 gave Felicia custody of Lynnette and reasonable visitation rights to James. The court found that both parents were fit and proper parties to have custody of the child. After the divorce, Felicia and Lynnette resided with petitioners in their (petitioners') home until Felicia's death on May 20, 1984. Upon Felicia's death, this litigation commenced.

On June 4, 1984, James filed a petition for modification of the divorce judgment in the circuit court of Cook County. James' petition sought to modify the divorce judgment to grant him custody of Lynnette in light of Felicia's death. The petition alleged that Lynnette was in the physical custody of petitioners and that petitioners had refused to hand over Lynnette into James' custody.

On June 7, 1984, the grandparents filed a petition in the same court seeking custody of Lynnette, pursuant to section 601(b)(2) of the IMDMA (Ill. Rev. Stat. 1981, ch. 40, par. 601(b)(2)). Their petition alleged, among other things, that James was not a fit and proper person to have custody of Lynnette; that there were bruises on Lynnette's body after visiting James; and that James' life-style was detrimental to Lynnette's well-being. Both petitions were consolidated before the trial court on June 8, 1984. On June 26, 1984, James filed a motion to dismiss the grandparents' petition, alleging lack of standing under section 601(b)(2) of the IMDMA. On that date, the attorneys for the parties appeared before the judge and, in the presence of a court reporter,

gave the judge a synopsis of what the case involved. The judge was told that the custodial parent was deceased and that the grandparents with whom the child resided sought to have legal custody granted to them. The natural father, James, also sought custody and had filed a motion to dismiss the grandparents' petition, asserting lack of standing. The judge allowed the grandparents seven days to respond to the motion to dismiss and set a date for a hearing of the motion. A discussion took place between the judge and the attorneys regarding the pending petitions and the upcoming motion to dismiss. The following are excerpts from that discussion:

"MR. MORGAN [counsel for the grandparents]: We are getting into the merits of the case.

MR. BURT [counsel for James Peterson]: On what legal basis are the grandparents holding the child?

THE COURT: I don't know that. Apparently from what I hear now I don't take this to be a legal basis. *** [T]he only reason I see is that they are holding the child after their daughter died, is that correct?

MR. MORGAN: The daughter had been sick for several years. She was living with them.

THE COURT: She had custody?

MR. MORGAN: Yes.

THE COURT: The question is does that give them possession. I would say this without giving you any indication that in and of itself does not give them possession.

The child was in their daughter's possession, not theirs, and the daughter was physically living with them. Don't forget this everybody bear in mind the natural parents of law in the State of Illinois has [sic] a superior right to the custody of their child.

Now, let me tell you something. Maybe the lawyers should sit down and talk. You know we are talking about a very serious thing here. We are talking about people saying that they want custody of a child over its natural, loving blood parent.

* * *

It is an uphill battle. That is all I am telling you pursuant to Illinois law, not my feelings one way or the other. I don't give my personal feelings. I am talking strictly Illinois law. Everybody better realize that the natural parent of the child has the superior right to the custody of that child, and if the mother had custody of the child and was either living with her parents or just having her parents take care of the child while she was ill there is a very touchy question whether or not this is considered

possession of a child.

It is not like they had possession of the child. The natural father was the visiting parent. They are going to have to show an awful lot.

\* \* \*

MR. MORGAN: That is the gist for the petition for temporary custody."

On June 29, 1984, prior to the hearing on James' motion to dismiss, the grandparents filed a motion for a change of venue. The motion alleged that the trial judge would be unable to give them a fair and impartial hearing. On July 2, 1984, a hearing was held on both motions (the grandparents' motion for change of venue and James' motion to dismiss the grandparents' petition). James Peterson, Patricia Jadrych (the grandmother), and Denise Hausfeld (a friend of the decedent, Felicia Peterson) testified at the hearing.

At the close of the hearing, the trial court issued its order, ruling that (1) the motion for change of venue was denied; (2) James' motion to dismiss the grandparents' petition was granted; (3) Lynnette was ordered turned over to James instanter; and (4) the grandparents' motion for a stay of the order pending appeal was denied. This court refused to impose a stay of the trial court's order and ordered an accelerated briefing and argument schedule.

On appeal, the grandparents argue that they have a clear statutory right to change of venue and the only question is whether their motion was timely. They assert that the trial court did not rule on any issue of substance prior to their motion for change of venue. Therefore, discussions which occurred between counsel and the court cannot be grounds for consideration of their venue motion. We disagree.

■ It is well settled that a petition for a change of venue must be made at the earliest practicable moment, and once a party has determined the court's attitude on some portion of the merits of the case, the right to a change of venue no longer exists. (*H. Watson Development Co. v. Bank & Trust Co.* (1978), 58 Ill. App. 3d 423, 431, 374 N.E.2d 767, 773.) In the instant case, although there was no substantial ruling nor had a hearing commenced, the statute (Ill. Rev. Stat. 1981, ch. 110, par. 2—1001(a)(2)(c)) does not contemplate a change of venue as of right after a party has had an opportunity to form an opinion that the court might treat his cause unfavorably. (*Gilberg v. Toys "R" Us, Inc.* (1984), 126 Ill. App. 3d 554, 557, 467 N.E.2d 947, 949.) Prior to the motion for a change of venue, the parties had engaged in an extensive discussion with the trial judge; although the merits of the case were not discussed at length, they were touched upon. The trial

judge indicated to counsel for the grandparents that based on his understanding of the facts, at that time, their burden of proof was very great. The judge pointed out that as he understood it, the law was not on their side. Nevertheless, he gave both sides an opportunity to prepare their arguments for presentation at the scheduled hearing on James' motion to dismiss.

■ A strong inference can be drawn from a review of the discussion between the trial judge and counsel for the parties that the grandparents were able to determine the court's attitude on the merits of the case. The judge's statements clearly indicated that he believed the law to favor James' position and not that of the grandparents. Further, he believed that the grandparents could not proceed under the provisions of the IMDMA. Having had such a unique opportunity to determine the thinking of the judge, we believe that, under these facts, the motion for change of venue as of right was untimely. (See *H. Watson Development Co. v. Bank & Trust Co.* (1978), 58 Ill. App. 3d 423, 374 N.E.2d 767.) Accordingly, the trial court did not abuse its discretion in denying the motion.

■ We next consider whether the trial court acted improperly in dismissing the grandparents' petition for lack of standing. The grandparents assert standing under section 601(b)(2) of the IMDMA (Ill. Rev. Stat. 1981, ch. 40, par. 601(b)(2)). That section states:

"sec. 601. Jurisdiction—Commencement of proceeding. (a) A court of this State competent to decide child custody matters has jurisdiction to make a child custody determination in original or modification proceedings as provided in Section 4 of the Uniform Child Custody Jurisdiction Act as adopted by this State.

(b) A child custody proceeding is commenced in the court:

(1) by a parent, by filing a petition:

(i) for dissolution of marriage or legal separation or declaration of invalidity of marriage; or

(ii) for custody of the child, in the county in which he is permanently resident or found; or

(2) by a person other than a parent, by filing a petition for custody of the child in the county in which he is permanently resident or found, but only if he is not in the physical custody of one of his parents."

The language of the statute is clear. (See *In re Custody of Barokas* (1982), 109 Ill. App. 3d 536, 440 N.E.2d 1036.) At the time that the grandparents filed their petition, Felicia, who had had legal custody of Lynnette, was deceased. James did not have legal or physical custody

of the child. The child was in the physical custody of the petitioners. Under these facts, we believe that the petitioners had standing to bring the petition under section 601(b)(2) of the IMDMA. Thus, it was error for the trial court to have dismissed their petition for lack of standing. Having determined that the petitioners had standing, we conclude that they were entitled to a hearing.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part and reversed in part and remanded, with directions that petitioners be granted a hearing.

Affirmed in part and reversed in part and remanded, with directions.

LINN, P.J., concurs.

JUSTICE ROMITI, dissenting:

Because I conclude that the grandparents here did not have standing under section 601(b)(2) of the IMDMA (Ill. Rev. Stat. 1983, ch. 40, par. 601(b)(2)), I respectfully dissent.

Recent Illinois decisions have held that section 601(b)(2), which permits nonparents such as grandparents to seek custody of a child only if that child is not in the physical custody of one of his parents, imposes upon nonparents the burden of demonstrating that they have standing to commence such an action. (See *In re Custody of Menconi* (1983), 117 Ill. App. 3d 394, 395-96, 453 N.E.2d 835; *In re Custody of Barokas* (1982), 109 Ill. App. 3d 536, 541, 440 N.E.2d 1036.) This standing requirement is not satisfied where the nonparents have had no more than intermittent physical possession of the child, since a circumstance such as "[o]vernight contact with third parties fails to fulfill the statutory provision that the child not be in the physical custody of one of her parents." (*In re Custody of Barokas* (1982), 109 Ill. App. 3d 536, 544.) Instead, nonparents such as grandparents seeking custody must show circumstances such as "[a] voluntary *** transfer of the child [to their possession], coupled with [a] lengthy period of care by the grandparents and [a] corresponding integration of the child into the home of her grandparents ***." (*In re Custody of Menconi* (1983), 117 Ill. App. 3d 394, 398.) Thus, in *Barokas* the court concluded that nonparents who had had overnight or vacation-time contact with the child did not have standing to file a custody petition under the IMDMA, while in *Menconi* the court concluded that nonparents who had had substantial, lengthy and sole responsibility for the care and parenting of the child did, in contrast, have standing to file a custody peti-

tion. In short, courts have determined whether nonparents have standing by focusing upon the relationship between the nonparent and the child, and have required a *prima facie* showing that the nonparents stand essentially in *loco parentis* to the child whose custody they seek. This rather considerable burden has been imposed in order to promote the "twin policies favoring the superior rights of natural parents to the custody of their children and of fostering greater stability in the home environment by deterring abductions and other unilateral removals of children. [Citations.]" (*In re Custody of Menconi* (1983), 117 Ill. App. 3d 394, 398.) This also comports with the rationale of the concept of standing in general, which is that a party may commence an action only if he can demonstrate sufficient personal interest in the outcome of the litigation. (See, *e.g., Wolinsky v. Kadison* (1983), 114 Ill. App. 3d 527, 530-31, 449 N.E.2d 151; *Weihl v. Dixon* (1977), 56 Ill. App. 3d 251, 253-54, 371 N.E.2d 881.) In the context of child custody, pursuant to the more flexible standards of the IMDMA, this personal stake is shown where the nonparent can establish the equivalent of a parent-child relationship with the child whose custody is sought, or something substantially similar thereto. If this requirement cannot be satisfied, the nonparent may still seek custody under the stricter standards of the Adoption Act (Ill. Rev. Stat. 1983, ch. 40, par. 1501 *et seq.*) or the Juvenile Court Act (Ill. Rev. Stat. 1983, ch. 37, par. 701—1 *et seq.*; see *In re Custody of Menconi* (1983), 117 Ill. App. 3d 394, 396-97).

In my view, the facts here do not support the conclusion that the grandparents have standing to file a custody petition under the IMDMA. The record clearly shows that the grandparents came into physical possession of Lynnette only because of the fortuitous circumstance of her mother's death, not by any actual transfer of the child to their care. In my opinion, this was insufficient to confer standing upon the grandparents to seek her permanent custody under the more flexible requirements of the IMDMA. Moreover, the facts here do not support the conclusion that Lynnette's grandparents, rather than her own mother, stood in *loco parentis* to Lynnette, nor do they establish that the grandparents even substantially shared these responsibilities with Lynnette's mother. The record does not demonstrate that the grandparents themselves cared for the child during a lengthy period or that they had integrated her into their home environment. Instead, the facts disclose only that Lynnette's mother, as her custodial parent, lived with Lynnette and her own parents while she cared for and parented Lynnette. For these reasons, I would find that the grandparents failed to satisfy the standing requirements of section 601(b)(2) of the Act, and would affirm the trial court's judgment.