(No. 61366.—

*In re* CUSTODY OF LYNETTE PETERSON (Raymond Jadrych *et al.*, Appellees; James Peterson, Appellant).

*Opinion filed April 4, 1986.*

Edward J. Burt and John G. Cossidente, Jr., of Urban & Burt, Ltd., of Oak Forest, for appellant.

Law Office of Patrick S. Moore, Ltd., of Chicago (Patrick S. Moore, of counsel), and Mark Patrick Morgan, P.C., of Midlothian, for appellees.

JUSTICE WARD delivered the opinion of the court:

On July 2, 1984, the circuit court of Cook County dismissed a petition for modification of custody brought by Raymond and Patricia Jadrych, the maternal grandparents of Lynette Peterson. The court ordered that custody of Lynette be turned over to James Peterson, the respondent and the natural father of Lynette. The appellate court reversed (129 Ill. App. 3d 887), and we allowed the respondent's petition for leave to appeal under Rule 315 (94 Ill. 2d R. 315(a).) The only question for us is whether the circuit court erred in dismissing, for lack of standing, the Jadrychs' petition for modification of custody under section 601(b)(2) of the Illinois Marriage

and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 601(b)(2)).

In September 1980, James and Felicia Peterson married, and a daughter, Lynette, was born to them in August 1981. Following her birth, James, Felicia and Lynette moved in with Felicia's parents, the Jadrychs. In May 1982, they left the Jadrychs and rented a house. Dissolution-of-marriage proceedings were begun by Felicia in December 1982, and a final decree was entered on February 23, 1983. The circuit court judged both parents fit to have custody of Lynette; it awarded custody to Felicia and provided reasonable visitation rights for James. Whether Lynette returned to live with the Jadrychs at the time the dissolution proceedings were commenced, or subsequent to the entering of the decree, is disputed. It is also disputed whether Felicia moved back to her parents' home immediately after the decree or at a later time.

Felicia and Lynette lived at the Jadrychs' home until Felicia's death in May 1984. During this period, James lived on the same block as the Jadrychs, and he exercised his visitation rights as to Lynette two days a week. The record shows that Felicia's fatal illness was long and disabling. Mrs. Jadrych testified that from the time the child came to her home, Felicia did not have sufficient strength to hold or bathe the child. After Felicia's funeral, James asked the Jadrychs to turn over Lynette to him and they refused. Later, both parties filed petitions for modification of custody, which were consolidated by the trial court.

"In child-custody disputes it is an accepted presumption that the right or interest of a natural parent in the care, custody and control of a child is superior to the claim of a third person. The presumption is not absolute and serves only as one of several factors used by courts in resolving the ultimately controlling question of where

the best interests of the child lie." (*In re Custody of Townsend* (1981), 86 Ill. 2d 502, 508. See also *In re Estate of Whittington* (1985), 107 Ill. 2d 169, 177.) This superior right of the natural parent is recognized and embodied in our statutory law. Under the Juvenile Court Act (Ill. Rev. 1981, ch. 37, par. 701—1 *et seq.*), a child may not be placed in the custody of a nonparent unless the parents are found to be "unfit." Similarly, pursuant to provisions in the Adoption Act (Ill. Rev. Stat. 1981, ch. 40, par. 1501 *et seq.*), consent of the natural parents is necessary for adoption of a child unless the parents are judged "unfit." Under the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 101 *et seq.*), the statute we consider here, nonparents must first satisfy a standing requirement in order to be considered for legal custody of a child. This standing requirement for nonparents appears in section 601, where it is stated:

"Sec. 601. Jurisdiction—Commencement of proceeding.

(a) A court of this State competent to decide child custody matters has jurisdiction to make a child custody determination in original or modification proceedings as provided in Section 4 of the Uniform Child Custody Jurisdiction Act as adopted by this State.

(b) A child custody proceeding is commenced in the court:

(1) by a parent, by filing a petition:

(i) for dissolution of marriage or legal separation or declaration of invalidity of marriage; or

(ii) for custody of the child, in the county in which he is permanently resident or found; or

(2) *by a person other than a parent*, by filing a petition for custody of the child in the county in which he is permanently resident or found, *but only if he is not in the physical custody of one of his parents.*

(c) Notice of a child custody proceeding shall be given to the child's parents, guardian and custodian, who

may appear, be heard, and file a responsive pleading. The court, upon showing of good cause may permit intervention of other interested parties." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 40, par. 601.)

Thus, nonparents must first show that the child is "not in the physical custody of one of his parents." When this requirement has been met, the nonparent will be considered for legal custody of the child under the "best interest of the child" standard (see Ill. Rev. Stat. 1981, ch. 40, par. 602), without necessity of first establishing the unfitness of the natural parents.

This court has not examined section 601(b)(2) prior to this appeal, but the appellate court has twice considered the section. In *In re Custody of Barokas* (1982), 109 Ill. App. 3d 536, the mother had placed her child in the temporary care of the child's adult sister. The sister later turned over the child to a third party who frequently had taken the child as an overnight guest. Once in possession of the child, the third party filed for custody under section 601(b)(2). The court held that the mother had never relinquished physical custody of the minor within the section's meaning and that the third party had not satisfied the standing provision.

The father in *In re Custody of Menconi* (1983), 117 Ill. App. 3d 394, placed his child with its paternal grandparents following the mother's death. The grandparents cared for the child for 6½ years. The father then returned and took the child from the grandparents by force. The court held that the grandparents had standing to petition for custody under 601(b)(2) because the father had voluntarily relinquished physical custody of the child and the child had lived with the grandparents for an extended period of time.

The *Barokas* and *Menconi* decisions correctly illustrate that the standing requirement under section 601(b)(2) should not turn on who is in physical posses-

sion, so to speak, of the child at the moment of filing the petition for custody. To hold differently would be to encourage abductions of minors in order to satisfy the literal terms of the standing requirement and would, in reality, defeat the statutory intendment.

Here, Felicia, the mother, was awarded legal custody of Lynette, and the father was given rights of visitation. Mother and child lived with the Jadrychs until the mother died. It is true, of course, that the Jadrychs assisted in the care of Lynette, but Felicia had legal custody of Lynette and continued to live with her, so there was no transfer of physical custody to the Jadrychs. The Jadrychs' assistance in caring for Lynette did not constitute physical custody of the child by them because Lynette and her mother were never separated for an appreciable period and thus the mother never lost physical custody. It was certainly natural and loving for the grandparents to assist their sick daughter in the care of her child. Considering, however, that the mother continued to live with the child, it would not reasonably occur to the father that the maternal grandparents had physical custody of his child and were developing a position of standing, so that upon the death of his wife he could be deprived of his right to custody of his child. The father regularly exercised his visitation rights with Lynette at the Jadrychs, where Lynette and her mother lived. Within the meaning of section 601(b)(2) Lynette must be considered to have been, upon her mother's death, in the physical custody of her father. On this record one presumes that the first time that James became aware that the Jadrychs regarded they had physical custody was when they refused to release Lynette to James following the death of her mother. He then petitioned for custody of his child.

Lynette was in the sole care of the Jadrychs only through the fortuitous occurrence of Felicia's death.

When they asserted a claim to custody following the mother's funeral, the claim was immediately challenged by the father. Of course, unfitness is not an issue here. If it were, a third party could challenge custody under the Adoption Act (Ill. Rev. Stat. 1981, ch. 40, par. 1501 *et seq.*) or the Juvenile Court Act (Ill. Rev. Stat. 1981, ch. 37, par. 701—1 *et seq.*). The appellate court erred in its holding that the Jadrychs had standing under section 601(b)(2) simply because they were, in a sense, in physical possession of the child at the time the petition was filed.

For the reasons given, the judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*