*In re* CUSTODY OF ALLISHA CHEREESE McCUAN, a Minor (William McCuan *et al.*, Plaintiffs-Appellees, v. Vickie McCuan, Defendant-Appellant (John McCuan, Defendant-Appellee)).

Fifth District    No. 5—87—0520

Opinion filed November 15, 1988.

Robert H. Rath, of Harrisburg, for appellant.

Howard B. Eisenberg, of Southern Illinois University, and Leslie Graves, law student, both of Carbondale, for appellee John McCuan.

Bruce D. Stewart, of Harrisburg, for appellees William McCuan and Janice McCuan.

PRESIDING JUSTICE HARRISON delivered the opinion of the court:

On December 2, 1985, William McCuan and Janice McCuan, plaintiffs, the grandparents of the child Allisha McCuan, brought suit against Vickie McCuan (the defendant), the mother of the child, for temporary and permanent custody of the child. The circuit court of Saline County issued an order on that date temporarily restraining the defendant from removing the child from the physical custody of the plaintiffs. The court subsequently heard the plaintiffs' petition for temporary custody on December 13, 1985, and on December 23, 1985, awarded temporary custody of the child to the plaintiffs. The court conducted a bench trial on the issue of custody on February 17, 1987, and from February 23 through 25, 1987. On June 10, 1987, the court awarded the "care, custody, control and education" of the child to the plaintiffs, granted the defendant weekly visitation rights, and ordered the defendant to pay half of the guardian *ad litem*'s fees of $2,692.50, and half of the psychologist's fees of $1,049.85. The defendant appeals. We reverse.

The defendant married John McCuan on November 21, 1984, two weeks after the birth of their child, Allisha. The McCuans resided together at the home of the plaintiffs prior to and immediately after their marriage, with occasional weekend visits to the home of the defendant's mother.

On January 28, 1985, John McCuan pleaded guilty but mentally ill to charges brought in Franklin County of home invasion and armed robbery, was sentenced to nine years' imprisonment, and was incarcerated at various institutions, including the Franklin County jail, the

Menard Correctional Center, and the Shawnee Correctional Center. After John McCuan's incarceration, the defendant and the child moved out of the plaintiffs' home and into the defendant's mother's home. The defendant filed a petition for dissolution of marriage from John McCuan on December 27, 1985, and the court entered a judgment of dissolution on April 17, 1986. John McCuan subsequently petitioned the court to appoint a guardian *ad litem* to represent the interests of the child. (See Ill. Rev. Stat. 1985, ch. 40, par. 506.) The court ordered the appointment of the guardian on May 20, 1986.

After the defendant and the child moved out of the plaintiffs' home, the plaintiffs took over the care and supervision of the child on most weekends. Each week the plaintiffs would receive a call from the defendant and would ask her if they could care for the child that weekend. If the defendant agreed, the plaintiffs would accept the child on either Friday or Saturday. The defendant called the plaintiffs at least once a week after she moved out of their home. The plaintiffs could not call the defendant because she did not have a telephone. After the weekend visitation, the plaintiffs would return the child between 6 p.m. and 9 p.m. on Sunday evening.

On the weekend beginning Friday, November 29, 1985, the plaintiffs accepted the supervision of the child in the usual manner. Upon receiving the child that day, the grandmother noticed that the child had a very serious diaper rash. The plaintiffs subsequently brought the child to the emergency room of the hospital for treatment.

On Monday, December 2, 1985, the plaintiffs filed their petition for custody. In their petition, the plaintiffs alleged that the defendant was not a fit and proper person to care for the child and requested that the court remove the child from the custody of the defendant and award custody to the plaintiffs. The plaintiffs alleged as grounds for this action, *inter alia*, that the defendant had engaged in an adulterous relationship with a man in the presence of the child, that she had used drugs and alcohol in the presence of the child, that she had raised the child in a dirty environment, and that she had failed to provide the child with proper clothing and medical care.

The plaintiffs alleged in their petition that at the time they filed their petition, the child resided with them. In her answer, filed on December 13, 1985, the defendant admitted that the plaintiffs had physical custody of the child, but alleged that the plaintiffs had obtained this physical custody when they had refused to return the child to her after the weekend visitation. The defendant also alleged that the child had resided with her since birth. On December 23, 1985, the trial court ordered temporary custody in favor of the plaintiffs.

On February 17, 1987, and February 23 through 25, 1987, the court tried the issue of permanent custody of the child. Throughout these proceedings, John McCuan, the father of the child, averred that the best interests of the child lay in awarding custody to the plaintiffs. On June 16, 1987, the court found that the child was, at the time of the plaintiffs' filing of the petition for custody on December 2, 1985, "residing with the plaintiffs" for purposes of standing under section 601(b)(2) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1985, ch. 40, par. 601(b)(2)), because:

"(a) The minor child resided in the home of the [p]laintiffs for the first few months of her life along with [d]efendants Vickie Dale and John McCuan.

(b) After the minor child was removed from the home of the [p]laintiffs, but prior to the filing of the [p]etition in this cause, the [p]laintiffs regularly had physical custody of the minor child on weekends during which time the [p]laintiffs did the types of things with the minor child that custodians do such as take her to their home and keep her all weekend, take her to visit with her father, buy her clothes, feed her, dress her, give her medicine, and on occasion take her to see a doctor.

(c) The relationship of the [p]laintiffs to the minor child during these weekend periods and other periods was that of custodians and not merely as babysitters and [d]efendant Vickie Dale regularly provided the minor child to the [p]laintiffs for their custodial care on the weekends and did so voluntarily.

(d) The [d]efendant, Vickie Dale, voluntarily submitted the minor child to the custodial care of the [p]laintiffs during the weekend immediately preceding the filing of the [p]etition for [c]ustody in this cause.

(e) There is no evidence whatsoever that the [p]laintiffs obtained physical custody of the minor child from [d]efendant Vickie Dale by trickery, force, coercion or any other improper means."

The court also found that the defendant was lawless, almost totally depraved, unambitious, and dishonest. The court found that these undesirable personal characteristics indicated that the defendant was not a proper role model for the minor child. The court, however, made no express finding of the defendant's unfitness. The court granted the defendant weekly visitation and ordered her to pay half of the guardian *ad litem*'s fees of $2,692.50, and half of the psychologist's fees of $1,049.85.

The defendant contends on this appeal that: (1) the plaintiffs did

not have standing to initiate an action for child custody under section 601(b)(2) of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 601(b)(2)), because the evidence does not support the trial court's findings that the plaintiffs had custody of the child on the date when the plaintiffs filed their petition for custody; and (2) the trial court abused its discretion when it entered judgment against the defendant for half of the guardian *ad litem*'s fees of $2,692.50, and half of the psychologist's fees of $1,049.85. The plaintiffs contend in their brief that the defendant waived her right to assert standing when she did not raise it as an affirmative defense in her answer. The counsel for John McCuan submitted a brief essentially restating the arguments made by the plaintiffs.

The defendant initially contends that the plaintiffs did not have standing to initiate an action for child custody under section 601(b)(2) of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 601(b)(2)). Section 601(b)(2) of the Act provides that "[a] child custody proceeding is commenced in the court *** by a person other than a parent, by filing a petition for custody of the child in the county in which he is permanently resident or found, but only if he is not in the physical custody of one of his parents." Ill. Rev. Stat. 1985, ch. 40, par. 601(b)(2).

■ In 1986, the Illinois Supreme Court held that nonparents proceeding under section 601(b)(2) of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 601(b)(2)) must first satisfy a standing requirement before the court may consider them for the legal custody of a child. (*In re Custody of Peterson* (1986), 112 Ill. 2d 48, 52, 491 N.E.2d 1150, 1152.) The meaning of the term "standing" as used in *Peterson* is distinct from the definition familiar to most students of the law. Generally, standing connotes whether a litigant has a justiciable interest in a controversy, and the standing of the litigants before the court is one of the components of the court's subject matter jurisdiction. The term "standing" as used in *Peterson* involves a threshold issue of whether a parent has custody of a child for purposes of satisfying the requirements of section 601(b)(2) of the Act. To satisfy standing under that statute, the nonparent must show that the child is "not in the physical custody of one of his parents." (*In re Custody of Peterson* (1986), 112 Ill. 2d 48, 53, 491 N.E.2d 1150, 1152; Ill. Rev. Stat. 1985, ch. 40, par. 601(b)(2).) When the nonparent meets this requirement, the court may then consider the nonparent's claim for the legal custody of the child under the "best interest of the child" standard. *In re Custody of Peterson* (1986), 112 Ill. 2d 48, 53, 491 N.E.2d 1150, 1152.

The Illinois Supreme Court's decision in *Peterson* supports the defendant's contention that the plaintiffs did not have custody of the

child on December 2, 1985, and thus had no standing to bring an action under section 601(b)(2) of the Act. (Ill. Rev. Stat. 1985, ch. 40, par. 601(b)(2).) In *Peterson*, the divorced mother of an infant child resided with the child at the home of the child's maternal grandparents. The mother subsequently died after a lengthy illness. During this illness, the grandparents provided most of the care for the child. After the death of the mother, the maternal grandparents and the natural father both sought custody of the child. At a hearing, the father moved to dismiss the grandparents' petition for modification of custody on the grounds that the grandparents lacked standing to pursue the action under the statute.

The trial court dismissed the grandparents' petition and the grandparents appealed. The appellate court held that at the time of their daughter's death, the grandparents had custody of the child for purposes of section 601(b)(2) of the Act because the presence of the child in their home satisfied the statute's requirement of "physical custody." *In re Custody of Peterson* (1984), 129 Ill. App. 3d 887, 892, 473 N.E.2d 412, 416.

The Illinois Supreme Court reversed the appellate court, holding that the plaintiffs did not have standing under section 601(b)(2) of the Act. The court found that when the mother died, the father gained legal custody of the child, even though he did not have physical custody. The grandparents' refusal to give the father physical custody of the child did not confer custody on the grandparents, because

> "the standing requirement under section 601(b)(2) should not turn on who is in physical possession, so to speak, of the child at the moment of filing the petition for custody. To hold differently would be to encourage abductions of minors in order to satisfy the literal terms of the standing requirement and would, in reality, defeat the statutory intendment." *In re Custody of Peterson* (1986), 112 Ill. 2d 49, 53-54, 491 N.E.2d 1150, 1152-53.

Following the *Peterson* case, the appellate court decided *In re Custody of O'Rourke* (1987), 160 Ill. App. 3d 584, 514 N.E.2d 6. *O'Rourke* also supports the defendant's contention that the plaintiffs lacked standing to pursue this action under section 601(b)(2) of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 601(b)(2)). In *O'Rourke*, a mother of two children died following a lengthy illness. An aunt and an uncle of the children, the petitioners in the action, brought suit against the father seeking custody of the children. The trial court awarded custody to the father. On appeal, the petitioners contended that the trial court erred in finding that they lacked standing under section

601(b)(2) of the Act. The appellate court held that the petitioners' allegations that they cared for the children on a weekly and often daily basis for 14 months "certainly did not vest physical or legal custody in the [petitioners]" for purposes of satisfying the standing requirement of section 601(b)(2) of the Act. (*O'Rourke*, 160 Ill. App. 3d at 587, 514 N.E.2d at 8.) The court held that despite the petitioners' weekly and often daily care of the children, the legal custody of the children vested in the mother until her death. At her death, physical custody transferred to the father.

■■ The *Peterson* and *O'Rourke* decisions stand for the proposition that the nonparent must show that the parent has relinquished "legal custody" of the child, rather than merely physical possession, before satisfying the standing requirement of section 601(b)(2) of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 601(b)(2)), and *O'Rourke* stands for the proposition that the nonparent must show more than merely weekend, or even daily, care of the children to support standing. In the instant case, the plaintiffs based their allegation of standing almost solely on the fact that they had supervised and cared for the child on weekends. Neither party disputes that after the plaintiffs supervised the child over the weekend beginning November 29, 1985, they did not return the child to its mother on Sunday, as had been their practice, but filed their petition and obtained a court order, without notice to the mother, on Monday, December 2, 1985, restraining the mother from reacquiring physical custody of the child. The fact that the defendant did not have physical possession of the child on the day the plaintiffs filed their petition, however, is not dispositive of whether the plaintiffs met the requirements for standing under section 601(b)(2) of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 601(b)(2)). This court may reasonably infer from the holdings in *Peterson* and *O'Rourke* that a mother does not relinquish custody for purposes of the statute merely because she leaves a child with her in-laws for the weekend.

The court on review will not disturb an order of the trial court in a custody dispute unless the order is against the manifest weight of the evidence or unless a manifest injustice will result. (*DeFranco v. DeFranco* (1978), 67 Ill. App. 3d 760, 766, 384 N.E.2d 997, 1002.) Since it is manifest from the evidence that the defendant in this action did not relinquish custody to the plaintiffs for purposes of satisfying section 601(b)(2) of the Act, we hold that the trial court's order on this issue was in error. We thus reverse the determination of the trial court.

■■ The defendant's second contention is that the trial court

abused its discretion when it entered judgment against the defendant for half of the guardian *ad litem*'s fees of $2,692.50 and half of the psychologist's fees of $1,049.85. While the parties have not cited and we have not found any Illinois cases on the standard a court of review must apply in determining whether the trial court in a custody dispute properly apportioned fees and costs between a parent and a nonparent, it is apparent from a number of cases that in apportioning the obligations of the parents to pay fees in a custody dispute, the court on review will reverse if the trial court abused its discretion. (See, *e.g.*, *In re Marriage of Kennedy* (1981), 94 Ill. App. 3d 537, 549, 418 N.E.2d 947, 955; *Levy v. Skilling* (1985), 136 Ill. App. 3d 727, 730, 483 N.E.2d 917, 920.) We find no reason in the law to depart from this standard in cases involving a parent and a nonparent.

The record indicates a substantial disparity between the abilities of the parties to pay the fees. The defendant was unemployed and had no assets. The plaintiffs had substantial income from two separate jobs. We thus hold that the facts and circumstances of the defendant's case demonstrate that the trial court abused its discretion in apportioning the plaintiffs' obligation to pay the fees, and we reverse the judgment of the trial court on this issue.

■ The plaintiffs contend that the defendant waived her right to object to the plaintiffs' standing to seek custody under section 601(b)(2) of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 601(b)(2)), because the affirmative allegations contained in the defendant's answer were insufficient to raise and preserve the question of the plaintiffs' standing. After an examination of the plaintiffs' petition and the defendant's answer, we find that the defendant's answer adequately preserved her right to assert the plaintiffs' lack of standing under section 601(b)(2) of the Act. The defendant affirmatively stated that the child resided with the defendant for her entire life and that the plaintiffs gained custody because they had refused to return the child to the defendant after visitation. We hold that no further pleading is required of the defendant to preserve her defense, and the plaintiffs' contention on this point fails.

For the foregoing reasons, we reverse the order of the circuit court of Saline County awarding custody of the child to the plaintiffs and assessing the defendant for a moiety of the guardian *ad litem*'s and psychologist's fees.

Reversed.

CALVO and WELCH, JJ., concur.