*In re* R.L.S., a Minor (Marsha Timmons, on Behalf of R.L.S., Plaintiff-Appellant, v. Ronald L.S., Defendant-Appellee (John Claggett *et al.*, Plaintiffs)).

Third District    No. 3—04—0220

Opinion filed December 20, 2004.—Rehearing denied January 20, 2005.

Karen C. Eiten, Michael T. Reagan, and Michael C. Jansz, all of Herbolsheimer, Lannon, Henson, Duncan & Reagan, P.C., of Ottawa, for appellant.

Kelly A. Kirwin, of Minooka, for appellee.

JUSTICE McDADE delivered the opinion of the court:

Plaintiff, Marsha Timmons, appeals the La Salle County circuit court's dismissal of her petition for guardianship of R.L.S. (born August 27, 1997) for lack of standing. For the reasons that follow, we reverse and remand to the circuit court for further proceedings.

## BACKGROUND

The relevant facts are not in dispute. Ronald and Karyn S. are R.L.S.'s parents. Karyn died in an automobile accident in December 2002. At the time of her death, Karyn and R.L.S. lived with Karyn's maternal grandmother in Illinois and Ronald lived in Florida. The day after their daughter's death, Karyn's parents, Marsha and Raymond Timmons, filed a petition for guardianship of R.L.S. pursuant to section 11—5 of the Probate Act of 1975 (Probate Act) (755 ILCS 5/11—5 (West 2002)). Ronald filed a motion to dismiss, which the circuit court denied. The court appointed petitioners temporary guardians. Following a hearing, the court held petitioners lacked standing to petition for guardianship and dismissed the petition. However, R.L.S. continues to reside with petitioners pursuant to a stay of the court's order. Petitioners appealed, and in November 2004 this court denied Ronald's request for dissolution of that stay. The sole issue before this court is whether petitioners had standing to petition for guardianship.

## ANALYSIS

■ The relevant provisions of the Probate Act read, in pertinent part, as follows:

"(a) Upon the filing of a petition for the appointment of a guardian or on its own motion, the court may appoint a guardian of the estate or of both the person and estate, of a minor, or may appoint a guardian of the person only of a minor or minors, as the court finds to be in the best interest of the minor or minors.

\*\*\*

(b) The court lacks jurisdiction to proceed on a petition for the appointment of a guardian of a minor if (i) the minor has a living parent, adoptive parent or adjudicated parent, whose parental rights have not been terminated, whose whereabouts are known, and who is willing and able to make and carry out day-to-day child care decisions concerning the minor, unless the parent or parents consent to the appointment or, after receiving notice of the hearing under Section 11—10.1, fail to object to the appointment at the hearing on the petition or (ii) there is a guardian for the minor appointed by a court of competent jurisdiction. There shall be a rebuttable presumption that a parent of a minor is willing and able to make and carry out day-to-day child care decisions concerning the minor, but the presumption may be rebutted by a preponderance of the evidence." 755 ILCS 5/11—5 (West 2002).

"If both parents of a minor are living and are competent to transact their own business and are fit persons, they are entitled to the custody of the person of the minor and the direction of his education. If one parent is dead and the surviving parent is competent to transact his own business and is a fit person, he is similarly entitled. The parents have equal powers, rights and duties concerning the minor. If the parents live apart, the court for good reason may award the custody and education of the minor to either parent or to some other person." 755 ILCS 5/11—7 (West 2002).

The circuit court stated it denied Ronald's motion to dismiss the petition because it "was under the impression that standing depended solely upon whether Petitioners can rebut the presumption that [Ronald] was willing and able to make day to day decisions concerning [R.L.S.]" but that, following hearing on the petition, it now believed "that the determination of the issue of standing in guardianship proceedings under the Probate Act is the same as the standing requirement of the Marriage Act." The court held that this "standing requirement" was stated in section 601(b)(2) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/601(b)(2) (West 2002)), which states that a child custody proceeding may be com-

menced by a person other than a parent "only if [the child] is not in the physical custody of one of his parents." 750 ILCS 5/601(b)(2) (West 2002). Based on the judicial construction of "physical custody" for purposes of that section (see *In re Custody of Peterson*, 112 Ill. 2d 48, 53-54, 491 N.E.2d 1150, 1152 (1986) ("the standing requirement under section 601(b)(2) should not turn on who is in physical possession, so to speak, of the child at the moment of filing the petition for custody")), the court concluded petitioners lacked standing.

Petitioners do not argue that R.L.S. was not in Ronald's "physical custody." Instead, petitioners argue the circuit court erroneously applied the standing requirement in section 601(b)(2) to a guardianship proceeding under the Probate Act. The circuit court determined that the requirements of section 601(b)(2) of the Marriage Act must be satisfied in a proceeding under section 11—5 of the Probate Act based on *In re Person & Estate of Newsome*, 173 Ill. App. 3d 376, 527 N.E.2d 524 (1988). The *Newsome* court held that the standing requirement in section 601(b)(2) incorporated into the Marriage Act the superior rights doctrine, which states that parents have the superior right to the care, custody, and control of their children. See *Troxel v. Granville*, 530 U.S. 57, 65-66, 147 L. Ed. 2d 49, 56-57, 120 S. Ct. 2054, 2060 (2000) (" 'It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder' "), quoting *Prince v. Massachusetts*, 321 U.S. 158, 166, 88 L. Ed. 645, 652, 64 S. Ct. 438, 442 (1943). The *Newsome* court also found that the Probate Act similarly incorporated the superior rights doctrine through section 11—7 of the Probate Act. *Newsome*, 173 Ill. App. 3d at 379, 527 N.E.2d at 525, citing *In re Custody of Townsend*, 86 Ill. 2d 502, 509-10, 427 N.E.2d 1231, 1235 (1981). Finally, the *Newsome* court concluded that "[b]ecause of the statutory adoption of the superior rights doctrine into the Probate Act, *** the standing requirement of the Marriage Act applies equally to the guardianship proceedings of the Probate Act." *Newsome*, 173 Ill. App. 3d at 379, 527 N.E.2d at 525.

*Newsome* engrafts language from the Marriage Act into the Probate Act, ostensibly for the purpose of incorporating the superior rights doctrine into the Probate Act. However, the *Newsome* court recognized that the Probate Act already incorporates the superior rights doctrine, through section 11—7 (755 ILCS 5/11—7 (West 2002)). See *Townsend*, 86 Ill. 2d at 509, 427 N.E.2d at 1235. Section 601(b)(2) of the Marriage Act arguably provides greater protection to parents' rights by creating a prerequisite (that the minor not be in the custody of one of its parents) to a third party instituting custody proceedings.

The legislature may have concluded that such additional protection was not required in proceedings under the Probate Act, "which is only triggered upon the death of a parent." *In re Petition of Kirchner*, 164 Ill. 2d 468, 484, 649 N.E.2d 324, 332 (1995). Regardless, how the superior rights doctrine is effectuated in one act is irrelevant to application of the same doctrine in another.

In *Peterson*, 112 Ill. 2d at 52, 491 N.E.2d at 1152, the court discussed the ways in which the "superior right of the natural parent is recognized and embodied in our statutory law." The court stated as follows:

> "Under the Juvenile Court Act [citation], a child may not be placed in the custody of a nonparent unless the parents are found to be 'unfit.' Similarly, pursuant to provisions in the Adoption Act [citation], consent of the natural parents is necessary for adoption of a child unless the parents are judged 'unfit.' " *Peterson*, 112 Ill. 2d at 52, 491 N.E.2d at 1152.

However, under the Marriage Act, nonparents must show that the child is not in the physical custody of one of his parents. "When this requirement has been met, the nonparent will be considered for legal custody of the child under the 'best interest of the child' standard [citation] without necessity of first establishing the unfitness of the natural parents." *Peterson*, 112 Ill. 2d at 53, 491 N.E.2d at 1152. The Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1—1 (West 2002)) requires "that the minor child be found to be delinquent, in need of supervision, or neglected or dependent before the child could be taken from the custody of its parents." *Townsend*, 86 Ill. 2d at 509, 427 N.E.2d at 1235.

■ From these holdings by our supreme court, we conclude that the showing required before the state will infringe upon the fundamental right of a parent to the care, custody, and control of his child is controlled by statute and, therefore, depends upon the statutory action involved. See *In re Marriage of Roberts*, 271 Ill. App. 3d 972, 981, 649 N.E.2d 1344, 1350 (1995) ("best interests of the child" is the basis for determining custody under the Marriage Act, while parents' rights can be set aside more easily under the Probate Act, but a stronger showing than best interests is required to remove custody from a natural parent under the Juvenile Court Act of 1987). The legislature is empowered to make such determinations so long as its procedures meet the requirements of due process. See *Santosky v. Kramer*, 455 U.S. 745, 753, 71 L. Ed. 2d 599, 606, 102 S. Ct. 1388, 1394-95 (1982) (discussing procedural protections in termination proceedings). In this context, due process requires a presumption in favor of the natural parent. See *Wickham v. Byrne*, 199 Ill. 2d 309, 320-21, 769 N.E.2d 1,

7-8 (2002), quoting *Troxel*, 530 U.S. at 72-73, 147 L. Ed. 2d at 61, 120 S. Ct. at 2064.

■ We believe the *Newsome* court erred in judicially redrafting section 11—7 of the Probate Act to include language from section 601(b)(2) of the Marriage Act. The requirement that the minor not be in the custody of a parent does not apply to a petition for guardianship under the Probate Act. Section 11—7's requirement that the parent be found unfit or, if the parents lived apart, that good cause exists to award custody to some other person provides sufficient protection for parents' superior right to the custody and control of their children within the context of proceedings pursuant to the Probate Act. In making these determinations, the circuit court may not place the parent "on equal footing with those seeking [guardianship]." *Wickham*, 199 Ill. 2d at 320, 769 N.E.2d at 7. That is, the burden is on the petitioner to prove unfitness or good cause, not on the parent to prove his fitness or disprove good cause. See *Troxel*, 530 U.S. at 69, 147 L. Ed. 2d at 59, 120 S. Ct. at 2062.

Moreover, our holding will not "allow *any third party* to seek guardianship of a child without establishing, as a threshold requirement, their standing to do so," as Ronald argues. (Emphasis in original.) "The purpose of section 11—5(b) is to prevent the circuit court from exercising its subject matter jurisdiction when the petitioner lacks standing." *In re Estate of Johnson*, 284 Ill. App. 3d 1080, 1090, 673 N.E.2d 386, 392 (1996). In guardianship proceedings, "whether [petitioners have] standing to petition for guardianship *** depends upon whether [they have] rebutted the presumption that [Ronald] was willing and able to make and carry out day-to-day child care decisions concerning [R.L.S.]." *Johnson*, 284 Ill. App. 3d at 1091, 673 N.E.2d at 393.

■ In this case, Ronald filed a motion to dismiss for lack of jurisdiction pursuant to sections 11—5(b) and 11—7. The circuit court denied that motion, finding that under the circumstances, it was not deprived of jurisdiction. The court stated:

"I think it is going to come down to a question of whether or not the presumption favoring the natural parent survives after I have heard the evidence or whether it has been rebutted by the evidence. Additionally, under the facts of this case, the parents here of this minor child lived separate and apart. And under Section 11—7, ***, I would have the right to proceed because they were living apart and make a determination based upon the evidence for good reason in awarding custody of the child."

Ronald made no attempt to appeal the trial court's denial of his motion. Nonetheless, the court never determined whether petitioners had

successfully rebutted the presumption, only, in effect, that Ronald's motion was premature. The court correctly stated the findings it must make before proceeding to a best interests determination. The cause is remanded for the court to determine whether petitioners have rebutted the presumption that Ronald is willing and able to make and carry out day-to-day child-care decisions concerning R.L.S. and, if so, to determine whether good cause exists to award petitioners guardianship and whether it would be in her best interest to do so.

## CONCLUSION

The order of the La Salle County circuit court dismissing the petition for guardianship for lack of standing by the petitioner is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

HOLDRIDGE, P.J., and BARRY, J., concur.