Docket No. 100081.

IN THE
SUPREME COURT
OF
THE STATE OF ILLINOIS

*In re* R.L.S., a Minor (Marsha Timmons, on Behalf of R.L.S.,
Appellee, v. Ronald L.S., Appellant).

*Opinion filed February 2, 2006.*

CHIEF JUSTICE THOMAS delivered the judgment of the court, with opinion.

Justices McMorrow, Freeman, Fitzgerald, Kilbride, Garman, and Karmeier concurred in the judgment and opinion.

**OPINION**

At issue in this appeal is the standing requirement for guardianship petitioners under article 11 of the Probate Act of 1975 (Probate Act) (755 ILCS 5/11–1 *et seq*. (West 2004)).

BACKGROUND

The minor, R.L.S., is the daughter of Karyn S. and respondent, Ronald S. On December 15, 2002, Karyn died in an automobile accident. At the time of her death, Karyn and respondent were separated. Karyn and R.L.S. had been living with Karyn′s maternal grandmother, Alma Meyers. Respondent resided in Florida. Following Karyn′s death, R.L.S.'s maternal grandparents, Ronald and Marsha Timmons (petitioners), filed a petition in the circuit court of

La Salle County to be appointed R.L.S.'s temporary and permanent guardians. The trial court entered an *ex parte* order appointing petitioners temporary guardians of R.L.S. and set the matter for a hearing.

Respondent moved to dismiss the petition, arguing that petitioners lacked standing to bring a petition for guardianship. The trial court denied the motion. The court relied on section 11–5(b) of the Probate Act (755 ILCS 5/11–5(b) (West 2004)). The court noted that, under this provision, petitioners could establish standing if they could rebut the presumption that respondent was willing and able to make and carry out day-to-day child care decisions concerning R.L.S. Following an evidentiary hearing and written arguments by the parties, the court concluded that respondent was correct that petitioners lacked standing. In a written order dismissing the guardianship petition, the court stated that, initially, it had been under the impression that the sole standing requirement to petition for guardianship was set forth in section 11–5(b). The court later determined, however, that it was bound by a line of appellate court cases, beginning with *In re Person & Estate of Newsome*, 173 Ill. App. 3d 376 (1988), which held that the standing requirement for nonparents who petition for custody under the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/101 *et seq.* (West 2004)) should be read into the Probate Act. The standing requirement for nonparents under the Marriage Act is provided in section 601(b)(2), which states that a child custody proceeding may be commenced by a person other than a parent "only if [the child] is not in the physical custody of one of his parents." 750 ILCS 5/601(b)(2) (West 2004). The trial court noted that this language has been interpreted to mean that the nonparent must show that the parent has voluntarily and indefinitely relinquished custody of the child. See, *e.g.*, *In re Petition of Kirchner*, 164 Ill. 2d 468, 491 (1995). Because respondent had not voluntarily and indefinitely relinquished custody of R.L.S., the trial court concluded that petitioners lacked standing and that the petition for guardianship had to be dismissed.

Petitioners appealed, and the appellate court reversed. 354 Ill. App. 3d 462. The appellate court held that the sole standing requirement for guardianship petitioners is stated in section 11–5(b) of the Probate Act. The court specifically rejected *Newsome*'s analysis. *Newsome* based its decision on the incorporation of the

superior rights doctrine into both the Marriage Act and the Probate Act. The superior rights doctrine is a presumption that parents have the superior right to care, custody, and control of their children. *In re Custody of Peterson*, 112 Ill. 2d 48, 51 (1986). *Newsome* reasoned that, because both the Marriage Act and the Probate Act incorporate the superior rights doctrine, petitioners under the Probate Act should have to meet the standing requirement of the Marriage Act. *Newsome*, 173 Ill. App. 3d at 379. In the present case, the appellate court rejected this analysis, holding that "how the superior rights doctrine is effectuated in one act is irrelevant to application of the same doctrine in another." 354 Ill. App. 3d at 466. The appellate court remanded the cause to the trial court to resolve the standing question under section 11‒5(b) of the Probate Act. 354 Ill. App. 3d at 468. We allowed respondent's petition for leave to appeal. 177 Ill. 2d R. 315.

## ANALYSIS

The primary objective in construing a statute is to give effect to the legislature's intent, presuming the legislature did not intend to create absurd, inconvenient or unjust results. *In re Madison H.*, 215 Ill. 2d 364, 372 (2005). Accordingly, courts should consider the statute in its entirety, keeping in mind the subject it addresses and the legislature's apparent objective in enacting it. *People v. Davis*, 199 Ill. 2d 130, 135 (2002). The best indication of legislative intent is the statutory language, given its plain and ordinary meaning. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 479 (1994). When the statutory language is clear, it must be given effect without resort to other tools of interpretation. *In re Marriage of Rogers*, 213 Ill. 2d 129, 136 (2004). Moreover, this court has a duty to construe a statute in a manner that upholds its validity and constitutionality if it reasonably can be done. *People v. Malchow*, 193 Ill. 2d 413, 418 (2000). Issues of statutory construction are reviewed *de novo*. *In re Michelle J.*, 209 Ill. 2d 428, 434 (2004).

Respondent argues that the appellate court erred in failing to follow other appellate court decisions holding that the standing requirement of the Marriage Act must be read into the Probate Act. See, *e.g.*, *Newsome*, 173 Ill. App. 3d at 379; *In re Marriage of Haslett*, 257 Ill. App. 3d 999, 1006 (1994); *In re Person & Estate of*

*Barnhart*, 232 Ill. App. 3d 317, 320-21 (1992). We disagree. As petitioners point out, the rule that petitioners under the Probate Act must satisfy the standing requirement of the Marriage Act was first stated in *Newsome*, a case decided before the legislature added a standing requirement for guardianship petitioners to the Probate Act.

The reasoning of *Newsome* was as follows. The superior rights doctrine, which holds that parents have the superior right to care, custody, and control of their children, is incorporated in both the Marriage Act and the Probate Act. The Probate Act recognizes the doctrine in section 11‒7, which provides:

> "If both parents of a minor are living and are competent to transact their own business and are fit persons, they are entitled to the custody of the person of the minor and the direction of his education. If one parent is dead and the surviving parent is competent to transact his own business and is a fit person, he is similarly entitled. The parents have equal powers, rights and duties concerning the minor. If the parents live apart, the court for good reason may award the custody and education of the minor to either parent or to some other person." 755 ILCS 5/11‒7 (West 2004).

The superior rights doctrine is also recognized in section 601(b)(2) of the Marriage Act. Section 601, which is entitled "Jurisdiction; Commencement of Proceeding," provides in subsection (b)(2) that a custody proceeding may be commenced by a nonparent "by filing a petition for custody of the child in the county in which he is permanently resident or found, but only if he is not in the physical custody of one of his parents."[1] 750 ILCS 5/601(b)(2) (West 2004). This court has interpreted this section as a standing requirement for nonparents. *Peterson*, 112 Ill. 2d at 52. That is, for a nonparent to have standing to seek custody under the Marriage Act, the nonparent must first show that the child is not in the physical custody of one of

---

[1]In *Siegel v. Siegel*, 84 Ill. 2d 212, 220-21 (1981), this court explained that the term "jurisdiction" in a previous version of section 601 did not refer to subject matter jurisdiction in the traditional sense, which is conferred by the Illinois Constitution, but rather to a limitation on the court's exercise of its existing jurisdiction.

his parents.[2] *Newsome* held that, because the Marriage Act and the Probate Act both incorporate the superior rights doctrine, a petitioner under the Probate Act must also meet the standing requirement of the Marriage Act. *Newsome*, 173 Ill. App. 3d at 379.

After *Newsome* was decided, the legislature amended section 11–5(b) of the Probate Act to add a standing requirement. Section 11–5(b) now provides as follows:

> "The court lacks jurisdiction to proceed on a petition for the appointment of a guardian of a minor if (i) the minor has a living parent, adoptive parent or adjudicated parent, whose parental rights have not been terminated, whose whereabouts are known, and who is willing and able to make and carry out day-to-day child care decisions concerning the minor, unless the parent or parents consent to the appointment or, after receiving notice of the hearing under Section 11–10.1, fail to object to the appointment at the hearing on the petition or (ii) there is a guardian for the minor appointed by a court of competent jurisdiction. There shall be a rebuttable presumption that a parent of a minor is willing and able to make and carry out day-to-day child care decisions concerning the minor, but the presumption may be rebutted by a preponderance of the evidence." 755 ILCS 5/11–5(b) (West 2004).

In *In re Estate of Johnson*, 284 Ill. App. 3d 1080, 1090 (1996), the appellate court, relying on this court's case law interpreting section 601(b)(2) of the Marriage Act, interpreted this to be a standing requirement for nonparents. The court determined that section

---

[2]This court later clarified in *In re A.W.J.*, 197 Ill. 2d 492, 496-97 (2001), that, when used in this sense, "standing" does not have the traditional meaning of a requirement that a litigant has a justiciable interest in a controversy. Rather, it merely refers to a threshold issue that must be determined before the court may proceed to a "best interests" determination.

11–5(b) was intended to prevent the circuit court from exercising jurisdiction when the petitioner lacks standing. *Johnson*, 284 Ill. App. 3d at 1090. We agree with this interpretation. This court interpreted the similar provision of section 601(b)(2) as a standing requirement for nonparents (*Peterson*, 112 Ill. 2d at 52), but later clarified that, when used in this sense, "standing" simply referred to a threshold statutory requirement that had to be met before the court could proceed to a decision on the merits (see *A.W.J.*, 197 Ill. 2d at 496-97). Thus, to have standing to proceed on a petition for custody under the Marriage Act, a petitioner must show that the child is not in the physical custody of one of his or her parents. 750 ILCS 5/601(b)(2) (West 2004); *Peterson*, 112 Ill. 2d at 52. To have standing to proceed on a petition for guardianship under the Probate Act, when the minor has a parent whose whereabouts are known, the petitioner must rebut the statutory presumption that the parent is "willing and able to make and carry out day-to-day child care decisions concerning the minor." 755 ILCS 5/11–5(b) (West 2004); see *Johnson*, 284 Ill. App. 3d at 1091. It is presumed that, when enacting new legislation, the legislature acts with full knowledge of previous judicial decisions addressing the subject matter of that legislation. *People v. Jones*, 214 Ill. 2d 187, 199 (2005). By enacting a standing requirement for guardianship petitioners after the courts had held that the proper standing requirement was that stated in the Marriage Act, the legislature made its intention clear. Regardless of whether *Newsome* was correct when decided, it is clearly not correct now, as the legislature has added a standing requirement to the Probate Act.

Respondent maintains, nevertheless, that the *Newsome* court's reading of the Probate Act is necessary to preserve the Act's constitutionality. Respondent contends that, unless guardianship petitioners under the Probate Act are required to show that the child is not in the physical custody of one of his parents, the Probate Act violates the parents' due process rights.

Petitioners contend that respondent has waived any constitutional arguments because he did not make them in the trial court or in the appellate court and because he did not notify the Attorney General pursuant to Supreme Court Rule 19 (134 Ill. 2d R. 19). We disagree. Respondent won in the trial court and was the appellee in the appellate court. " 'Where the trial court is reversed by the Appellate Court and the appellee in that court brings the case here for further

˘6˘

review, he may raise any questions properly presented by the record to sustain the judgment of the trial court, even though those questions were not raised or argued in the Appellate Court.' " *Dineen v. City of Chicago*, 125 Ill. 2d 248, 264 (1988), quoting *Mueller v. Elm Park Hotel Co.*, 391 Ill. 391, 399 (1945). Respondent had no reason to raise the due process argument before now. In the trial court, he argued that *Newsome* supplied the proper standing requirement, and the trial court agreed with him. Respondent contends that, by rejecting *Newsome*, the appellate court placed an unconstitutional construction on the statute. We also do not believe that Rule 19 required respondent to notify the Attorney General of this argument. Rule 19(a) requires a party to serve notice on the Attorney General when the constitutionality of a statute is being challenged. 134 Ill. 2d R. 19(a). The purpose of the notice is to allow the Attorney General to intervene and defend the constitutionality of the challenged provision. 134 Ill. 2d R. 19(c). Here, however, respondent is not arguing that section 11−5(b) of the Probate Act is unconstitutional and thus unenforceable. He is merely arguing that due process requires reading this section in conjunction with section 601(b)(2) of the Marriage Act and applying the latter to proceedings under both the Probate Act and the Marriage Act. Under these circumstances, we do not believe that respondent was required to notify the Attorney General of this argument.

Respondent's due process argument is based on *Troxel v. Granville*, 530 U.S. 57, 147 L. Ed. 2d 49, 120 S. Ct. 2054 (2000) (plurality op.). In *Troxel*, the Supreme Court considered a challenge to a Washington statute that allowed any person to petition for visitation rights " 'at any time,' " and authorized the court to grant visitation rights whenever " 'visitation may serve the best interest of the child.' " *Troxel*, 530 U.S. at 60, 147 L. Ed. 2d at 53, 120 S. Ct. at 2057, quoting Wash. Rev. Code §26.10.160(3) (2005). The Supreme Court affirmed the Washington Supreme Court's determination that the statute was unconstitutional. The Court based its decision on the due process clause of the Fourteenth Amendment, which " 'provides heightened protection against government interference with certain fundamental rights and liberty interests.' " *Troxel*, 530 U.S. at 65, 147 L. Ed. 2d at 56, 120 S. Ct. at 2060, quoting *Washington v. Glucksberg*, 521 U.S. 702, 720, 138 L. Ed. 2d 772, 787, 117 S. Ct. 2258, 2267 (1997). The court stated that the liberty interest of parents

in the care, custody and control of their children is "perhaps the oldest of the fundamental liberty interests recognized by [the] Court." *Troxel*, 530 U.S. at 65, 147 L. Ed. 2d at 56, 120 S. Ct. at 2061. In holding that the statute violated due process as applied to the case before it, the Supreme Court identified two principal problems. First, the statute was "breathtakingly broad." *Troxel*, 530 U.S. at 67, 147 L. Ed. 2d at 57, 120 S. Ct. at 2061. By allowing any person to petition for visitation at any time, and allowing the court to grant visitation rights whenever visitation may serve the best interest of the child, the statute subjected any visitation decision by a parent to state court review. *Troxel*, 530 U.S. at 67, 147 L. Ed. 2d at 57, 120 S. Ct. at 2061. The statute accorded no deference to a parent's determination of whether visitation was in the child's best interests, instead leaving the matter entirely in the judge's hands.

Second, there had been no court finding, or even an allegation, that the custodial parent was unfit. The Court noted the presumption that fit parents act in the best interests of their children. *Troxel*, 530 U.S. at 68, 147 L. Ed. 2d at 58, 120 S. Ct. at 2061. The Court explained that, "so long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Troxel*, 530 U.S. at 68-69, 147 L. Ed. 2d at 58, 120 S. Ct. at 2061. The Court held that if a fit parent's parenting decisions were going to be subject to judicial review, the courts must accord at least some special weight to the parent's own determination. *Troxel*, 530 U.S. at 70, 147 L. Ed. 2d at 59, 120 S. Ct. at 2061. This court later relied on *Troxel* to invalidate an Illinois statute that allowed a court to award visitation to grandparents, great-grandparents, or the sibling of a minor child if the court determined that it was in the best interests and welfare of the child. *Wickham v. Byrne*, 199 Ill. 2d 309 (2002). This court found that, like the statute at issue in *Troxel*, the Illinois statute placed parents on equal footing with those seeking visitation and contravened the presumption that parents are fit and act in the best interests of their children. In other words, the statute allowed a trial judge to second-guess a fit parent's decisions as to what was in a child's best interests. *Wickham*, 199 Ill. 2d at 320.

We disagree with respondent's assertion that the Probate Act,

when not read in conjunction with section 601(b)(2) of the Marriage Act, suffers from the same infirmities identified by the courts in *Troxel* and *Wickham*. Respondent argues that, just as the Washington statute allowed "any person" to petition for visitation at "any time," the Probate Act allows any qualified nonfelon adult (755 ILCS 5/11‑3(a) (West 2004)) to commence a guardianship proceeding simply by filing a petition (755 ILCS 5/11‑5(a) (West 2004)). Respondent contends that the problem is cured if *Newsome* is followed and the court is required to dismiss a guardianship petition if the child is in the physical custody of one of his parents.

While it is true that the Probate Act places only minimum limits on who may file a petition for guardianship, the Probate Act does not suffer from the first infirmity identified by the Supreme Court in *Troxel*. The problem with the "any person" at "any time" language considered in *Troxel* was that it allowed any visitation decision by a fit parent to be subject to state court review. Once a visitation petition was filed, the statute allowed the matter to go directly to a best-interests hearing before a judge, and the parent's determination of the child's best interests would be given no deference at the hearing. *Troxel*, 530 U.S. at 67, 147 L. Ed. 2d at 57-58, 120 S. Ct. at 2061. By contrast, the Probate Act prevents the court from proceeding to the merits of the guardianship petition if the child "has a living parent, adoptive parent or adjudicated parent, whose parental rights have not been terminated, whose whereabouts are known, and who is willing and able to make and carry out day-to-day child care decisions concerning the minor, unless the parent or parents consent to the appointment or, after receiving notice of the hearing under Section 11‑10.1, fail to object to the appointment at the hearing on the petition." 755 ILCS 5/11‑5(b) (West 2004). Moreover, the Probate Act presumes that a parent is willing and able to carry out day-to-day child care decisions, and this presumption may be overcome only by a preponderance of the evidence. 755 ILCS 5/11‑5(b) (West 2004). Thus, a person who petitioned for visitation under the Washington statute would be given a hearing on merits, and the determination of the child's best interests would be made without any deference to the parents' decision. By contrast, a person who files a petition for guardianship under the Probate Act will have the petition dismissed if the child has a parent who is willing and able to carry out day-to-day child care decisions. State interference with fundamental parental

childrearing rights is justified in limited instances to protect the health, safety, and welfare of children. *Wickham*, 199 Ill. 2d at 317. By allowing a guardianship petition to proceed to a hearing on the merits over the wishes of a parent only when the parent has been established to be unwilling or unable to carry out day-to-day childcare decisions, the Probate Act respects the superior rights of parents while also insuring to protect the health, safety, and welfare of children. We fail to see how the Probate Act suffers the same infirmity as the statute at issue in *Troxel*.[3]

The second major problem identified by the Supreme Court in *Troxel* was the manner in which the statute was applied to a parent who had not been found unfit. Fit parents are presumed to act in the best interests of their children, but the trial court in *Troxel* applied the opposite presumption. It required a parent to *disprove* that visitation with the petitioners was in the child's best interests. By applying the

---

[3]At oral argument, respondent contended that the problem with the legislature's use of the word "able" in section 11‒5(b) is that "able" is susceptible to more than one meaning. It could mean "possessed of needed powers *** or of needed resources *** to accomplish an objective" (Webster's Third New International Dictionary 4 (1993)), or it could mean something more akin to "marked by intelligence, knowledge, skill, or competence" (Webster's Third New International Dictionary 4 (1993)). We believe that the legislature clearly meant the former. Applying the latter definition would raise serious constitutional questions. Moreover, the legislature placed the term "able" after the noun that it modifies, which generally signifies that the former meaning is intended. See Webster's Third New International Dictionary 4 (1993).

statute in this manner, the trial court "failed to provide any protection for Granville's fundamental constitutional right to make decisions concerning the rearing of her own daughters." *Troxel*, 530 U.S. at 70, 147 L. Ed. 2d at 59, 120 S. Ct. at 2062.

Such a problem should never arise in a guardianship proceeding under the Probate Act. Section 11–7 specifically protects the custody rights of fit parents. The first sentence of this section provides that if both parents are living, fit, and competent to transact their own business, they are entitled to custody. The next sentence provides that if one parent is deceased, then the surviving parent, if fit and competent to transact his or her own business, is entitled to custody. Respondent, as R.L.S.'s surviving parent, is thus entitled to custody if he is a fit person and competent to transact his own business.

Some ambiguity is created by the final sentence of section 11–7. This sentence provides that, "[i]f the parents live apart, the court for good reason may award the custody and education of the minor to either parent or to some other person." Respondent is concerned that this sentence means that, because he was living apart from the mother when she died, the court may grant guardianship to some other person simply on a showing of "good reason," and that this sentence trumps the previous sentence, which would allow him to have custody if he is fit. It appears that the trial court and the appellate court also interpreted the statute in this manner. At the beginning of the hearing, the trial court stated that, "under the facts of this case, the parents here of this minor child lived separate and apart. And under Section 11–7, if this were to be considered a custodial case as opposed to a guardianship case, I would have the right to proceed because they were living apart and make a determination based upon the evidence for good reason in awarding custody of the child." When describing the protections afforded by section 11–7, the appellate court stated that "Section 11–7's requirement that the parent be found unfit *or*, if the parents lived apart, that good cause exists to award custody to some other person provides sufficient protection for parents' superior right to the custody and control of their children within the context of proceedings pursuant to the Probate Act." (Emphasis added.) 354 Ill. App. 3d at 467.

We disagree with this interpretation. The final sentence of section 11–7 cannot be read in isolation from the previous sentences. See

*Lulay v. Lulay*, 193 Ill. 2d 455, 466 (2000) (statutes should be evaluated as a whole, with each provision construed in connection with every other provision). We agree with the interpretation given this section by the appellate court in *In re Estate of Brown*, 207 Ill. App. 3d 139 (1990). In rejecting an argument that section 11−7 allowed children to be more easily removed from parents who live apart, the court interpreted the "good reason" in the last sentence as referring to a finding of unfitness. *Brown*, 207 Ill. App. 3d at 144. Petitioners point out that the wording of this final sentence was necessary to fix a problem of draftsmanship. If the final sentence merely stated that if the parents live apart, the court may award custody to either parent, it might be interpreted as meaning that the court could award custody *only* to one of the parents. If neither parent is fit, however, the court obviously has the right to award custody to some other person. It is implicit in the first two sentences of section 11−7 that the court may award custody to some other person if the child lacks a fit parent. Further, in a situation in which both parents are fit and live apart, the court cannot rely on the superior rights doctrine because both parents start out on equal footing. *In re Custody of Townsend*, 86 Ill. 2d 502, 509 (1981). In such a situation, the court would have to rely on "good reason" or the best interests of the child in determining which parent should be awarded custody. Thus, as properly construed, section 11−7 provides that fit parents are entitled to custody. If the child does not have a fit parent, good reason exists to award the child to a third party. In a situation in which the parties live apart, the court may award the child to either parent if both are fit. If neither parent is fit, the court may award custody to some other person. The "live apart" language has no application when one parent is deceased. Even petitioners concede that it is not the last sentence of section 11−7 that applies to respondent, but rather the second (*i.e.*, "if one parent is dead").

Although section 11−7 is quite clear that fit parents are entitled to custody, this court has historically refused to apply the statute as written. Instead, this court has repeatedly held that, despite the statute's pronouncement, a fit parent's custody rights are subservient to the best interests of the child. See, *e.g.*, *Kirchner*, 164 Ill. 2d at 484-85; *In re Estate of Whittington*, 107 Ill. 2d 169, 177 (1985); *Townsend*, 86 Ill. 2d at 508; *People ex rel. Edwards v. Livingston*, 42 Ill. 2d 201, 209-10 (1969). A typical example of this court's view of

section 11-7 can be found in *Kirchner*. That case reaffirmed the principle that, in an adoption case, a court cannot consider the best interests of the child and whether those interests would be best served by adoption until after the parents are proved to be unfit by clear and convincing evidence. *Kirchner*, 164 Ill. 2d at 475-76. The prospective adoptive parents in *Kirchner* attempted to rely on *Townsend* for the proposition that fitness of the parents is only one factor to consider in determining the best interests of the child. In rejecting this argument, this court stated the following:

> "Although *Townsend* cites to *Giacopelli* and further finds that the father at issue need not be found unfit to award custody of his child to a third party, it does so pursuant to the Probate Act of 1975, which is only triggered upon the death of a parent, a situation we are not confronted with in the instant case. Unlike the Adoption Act, the Probate Act does not statutorily mandate a finding of unfitness as a condition precedent to divesting a parent of custody. (See 755 ILCS 5/11-7 (West 1992); see also *People ex rel. Edwards v. Livingston* (1969), 42 Ill. 2d 201 (a probate case deciding custody based upon the best interests of the child without a prior finding of unfitness).) The best-interests standard employed pursuant to the Probate Act in *Townsend* and *Edwards* is thus inapplicable to the case at bar both because this case does not involve a deceased parent and because Otto's cause of action arises out of the Adoption Act, which mandates a finding of unfitness before parental rights may be terminated." *Kirchner*, 164 Ill. 2d at 484-85.

There are numerous problems with this passage. First, this court mistakenly distinguished *Townsend* on the basis that the Probate Act is triggered only upon the death of a parent. While it is obviously true that certain sections of the Probate Act are triggered by the death of a person, it is not true of the guardianship provisions of the Probate Act. Neither article XI (755 ILCS 5/11-1 *et seq.* (West 2004)), which deals with guardianship of minors, nor article XIa (755 ILCS 5/11a-1 *et seq.* (West 2004)), which deals with guardianship of disabled adults, is triggered automatically by the death of a person. Nothing in article XI limits its application to situations in which one parent is deceased. The guardianship of minors provisions of the Probate Act are triggered not upon the death of a parent, as stated in *Kirchner*, but

rather upon "the filing of a petition for the appointment of a guardian" or on the court's own motion. 755 ILCS 5/11–5(a) (West 2004). By its very terms, the Act contemplates guardianship proceedings in which both parents are living. See 755 ILCS 5/11–7 (West 2004) ("If both parents of a minor are living," "If the parents live apart"); 755 ILCS 5/11–8(a)(2)(ii) (West 2004) ("The petition for appointment of a guardian *** must state, if known: *** the names and post office addresses of *** the parents and adult brothers and sisters, if any"). Indeed, *Townsend*, the case *Kirchner* distinguished as being based on the Probate Act, which was supposedly triggered only upon the death of a parent, was a case in which both parents were living. In *Townsend*, the minor's mother, who had been the custodial parent, was convicted of murdering the father's wife. The father then attempted to gain custody of his daughter, who had been in the care of her older sister since her mother's incarceration. Both parents were living, and this court decided the case under section 11–7 of the Probate Act. See also, *e.g.*, *Barnhart*, 232 Ill. App. 3d 317 (a guardianship proceeding under the Probate Act, in which both parents were living).

The second problem with the *Kirchner* court's view of the Probate Act was its assertion that "[u]nlike the Adoption Act, the Probate Act does not statutorily mandate a finding of unfitness as a condition precedent to divesting a parent of custody." *Kirchner*, 164 Ill. 2d at 484-85. Two authorities are cited for this proposition. The first is section 11–7, which says the exact opposite. Section 11–7 clearly provides that fit parents are entitled to custody. The second authority cited was *Livingston*. In that case, this court acknowledged that the predecessor section to section 11–7 provided that a surviving parent, if fit, was entitled to the custody of this child. Despite this clear language, however, this court held that parental fitness was only one factor for the court to consider and that a fit parent's rights must yield to the best interests of the child. *Livingston*, 42 Ill. 2d at 209-10. *Livingston*, however, relied on *Giacopelli v. The Florence Crittenton Home*, 16 Ill. 2d 556 (1959), a case that this court overruled and criticized in *Kirchner*. *Kirchner* held that *Giacopelli* was wrong even at the time it was decided (*Kirchner*, 164 Ill. 2d at 483 n.1), was "clearly unconstitutional," (*Kirchner*, 164 Ill. 2d at 482), and, by dispensing with a requirement of unfitness, was "an unconstitutional remnant of a bygone era" (*Kirchner*, 164 Ill. 2d at 482).

Not cited by the *Kirchner* court was section 11–5(b) of the Probate Act, the amendments to which had been in effect for one year when *Kirchner* was decided. As we discussed earlier, section 11–5(b) now provides that a court lacks jurisdiction to proceed on a guardianship petition if the minor has a living parent whose whereabouts are known and who is willing and able to carry out day-to-day childcare decisions. It is not clear what, if any, difference there is between section 11–7's reference to fit parents who are competent to transact their own business and section 11–5(b)'s reference to parents who are willing and able to carry out day-to-day childcare decisions. The legislature might have believed that the amendment to section 11–5(b) was necessary in light of this court's interpretation of section 11–7. Regardless, *Kirchner*'s conclusion that the Probate Act does not mandate a finding of unfitness as a condition precedent to divesting a parent of custody is rendered even more questionable by the amendment to section 11–5(b).

This court's cases refusing to apply section 11–7 as written are wrong and should no longer be followed. Section 11–7 means what it says: fit parents are entitled to custody. The Probate Act, as properly construed, protects the due process rights of fit parents and does not suffer from the same constitutional infirmities as the Washington statute considered in *Troxel*.

For the reasons stated, we agree with the holding of the appellate court that the standing requirement for guardianship petitioners under the Probate Act is that stated in section 11–5(b). We disagree with the appellate court only to the extent that it suggested that a fit surviving parent may be deprived of custody under the Probate Act if he or she was living apart from the other parent at the time that parent died. We affirm the judgment of the appellate court and remand this cause to the circuit court to resolve this case under the proper standards. The petitioners lack standing to proceed with their petition unless the court determines that they have rebutted the presumption that respondent is willing and able to make day-to-day child care decisions. Moreover, if respondent is a fit person who is competent to transact his own business, he is entitled to custody of R.L.S.

*Appellate court judgment affirmed;*
*cause remanded.*