Rule 23 Order filed
 NO. 5-01-0133

June 19, 2002;

Motion to publish granted
 IN THE

August 7, 2002.

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

In re
 CUSTODY OF ABAGAIL M. GROFF, )  Appeal from the

a Minor )  Circuit Court of

)  Marion County.

(Phillip A. Groff and Carol A. Groff, )

)

     Petitioners-Appellees, )

)

v. )  No. 99-F-46

)

Abagail M. Groff and Albert K. Seagle, )

)

     Respondents, )

)

and )

)

Christina L. Groff, )  Honorable

)  David L. Sauer,

     Respondent-Appellant). )  Judge, presiding.

________________________________________________________________________

JUSTICE KUEHN delivered the opinion of the court:

This case arrives in our court on appeal for the second time.  The original appeal to this court involved Judge David L. Sauer's order in which he refused to vacate an order that had been entered one week earlier.  That order awarded the custody of a minor child to the maternal grandparents (Phillip A. Groff and Carol A. Groff (the Groffs)) by consent.  The child's mother, Christina L. Groff, either had a change of heart or, as she contends, did not understand that what her parents were asking her to sign was something more than a designation that, upon her incapacitation or death, they would receive the custody of her minor child.

Before we get to the issues raised in this appeal, we will briefly provide this case's factual background.  Christina gave birth to a child on May 16, 1999.  Custody issues had been discussed prior to the child's birth.  Christina resided in West Frankfort, Illinois, while the Groffs resided in Sandoval, Illinois.  Shortly after the child's birth, Christina and her baby went to her parents' home to spend a few days.  After the visit, she and the baby returned to their home.  They returned to Sandoval for another visit on or about June 7, 1999, at which time custody issues were again discussed.  

On June 9, 1999, the Groffs presented Christina with an entry of appearance, a waiver, and a consent, along with a petition to establish custody.  Christina signed the entry and took an identical set to the child's natural father.  The natural father, Albert K. Seagle, signed his set on June 9, 1999.  On June 11, 1999, the Groffs took all of the documents to court, and the 
ex parte
 order awarding custody of Christina's child to the Groffs was entered.

Christina received a copy of the order on June 16, 1999, upon which she immediately sought legal advice.  The following day, June 17, 1999, Christina filed a motion to vacate the June 11, 1999, order.  She did not file a separate motion seeking to withdraw or otherwise invalidate her entry of appearance, which contained her consent to a change of guardianship.  Christina claimed that the consent was obtained under duress and coercion on the part of her mother.  The motion stated emphatically that Christina did not intend to relinquish the custody of her child.  

She supplemented her motion to vacate on August 9, 1999, claiming that the Groffs lacked standing to seek the custody of her child.  

On August 27, 1999, the trial court held an evidentiary hearing.  Testimony from Christina, the Groffs, and Christina's sister, Kathy Groff, was taken.  Kathy Groff's testimony shed some light on the original reason for these legal maneuvers.  She testified that before the baby was born, she overheard conversations between Christina and her parents regarding the unborn child's custody.  The Groffs did not want the baby's natural father to be able to obtain the custody of the child in the event that Christina died.  To help Christina get established, her parents agreed to care for the child after it was born, until Christina had a place to live.  Kathy Groff believed that her parents would maintain the custody of the baby after Christina found her place to live.

Following the hearing, the trial court entered an order on September 13, 1999.  Judge David L. Sauer found that the Groffs had standing because the minor child (and the child's mother) were living under their roof when the petition was filed and because both parents signed the consent to the child's custody being placed with the Groffs.  Judge Sauer stated that he did not find that Christina signed the consent under duress or coercion.  He denied both of Christina's motions.  On that same date, Judge Sauer entered an order of visitation on behalf of Christina and the child.

Christina appealed to this court.  In that appeal, we ordered Judge Sauer to vacate the default order awarding custody of the minor child to the Groffs.  
In re Custody of Groff
, No. 5-99-0653, order at 5 (October 4, 2000) (unpublished order pursuant to Supreme Court Rule 23 (166 Ill. 2d R. 23)).  The issue of the Groffs' standing to seek custody was raised in that appeal, but because we concluded that Judge Sauer abused his discretion and that the default order should be vacated, we found that it was unnecessary to address the standing issue.   
In re Custody of Groff
, order at 5.  

Judge Sauer ultimately vacated the default order on November 9, 2000.  In the transcript of the recorded hearing, it seems clear that Judge Sauer was confused by this court's order.  He indicated that because we failed to rule upon the worthiness of Christina's original entry of appearance by which she consented to the custody change, the situation had not changed.  

From oral argument of this case, we learned that by docket entry, Judge Sauer ordered that the minor child remain in the custody of the Groffs, subject to Christina's right to visitation.  That docket entry is not a part of the record, but the parties agree that there was no hearing held prior to the order's entry and no evidence was produced about the best interests of the minor child.

On November 9, 2000, the Groffs filed a new petition for temporary and permanent custody.  On November 14, 2000, Christina filed a motion to dismiss the Groffs' petition and also filed a 
habeas corpus
 petition seeking to have her child produced and turned over to her pending the custody determination.  In this petition, Christina argued that once the original order was vacated, there was no order authorizing the Groffs to retain custody since the order granting them custody was no longer in existence.  Her petition also alleged that the Groffs lacked standing to seek custody.  The trial court denied her petition on February 2, 2001.  This appeal results from that denial.

Section 601(b)(2) of the Illinois Marriage and Dissolution of Marriage Act provides, "A child custody proceeding is commenced in the court[,] *** by a person other than a parent, by filing a petition for custody of the child in the county in which he is permanently resident or found, but only if he is not in the physical custody of one of his parents."  750 ILCS 5/601(b)(2) (West 2000).  Determining whether the nonparent has standing to seek the custody of a minor child requires making this initial finding.  
In re Marriage of Sechrest
, 202 Ill. App. 3d 865, 870, 560 N.E.2d 1212, 1214 (1990) (relying on 
In re Custody of Peterson
, 112 Ill. 2d 48, 52, 491 N.E.2d 1150, 1152 (1986)).  Only after finding that the nonparent has standing can the trial court turn to the issue of custody.  
In re Marriage of Sechrest
, 202 Ill. App. 3d at 870, 560 N.E.2d at 1214 (relying on 
In re Custody of Peterson
, 112 Ill. 2d at 52, 491 N.E.2d at 1152).  Upon determining that the nonparent has standing, the trial court then must determine custody utilizing the "best interest of the child" standard.  
In re Marriage of Sechrest
, 202 Ill. App. 3d at 870, 560 N.E.2d at 1215. 

The nonparent bears the burden of proving that he or she has standing.  
In re Marriage of Siegel
, 271 Ill. App. 3d 540, 542, 648 N.E.2d 607, 610 (1995).

Standing, in the context of child custody, means that the court must initially conclude that a nonparent has the custody of the minor.  
In re Marriage of Sechrest
, 202 Ill. App. 3d at 870, 560 N.E.2d at 1214-15 (relying on 
In re Custody of McCuan
, 176 Ill. App. 3d 421, 425, 531 N.E.2d 102, 105 (1988)).  Stated conversely, a nonparent can only assert standing if the natural parent does not have the physical custody of the child.  
In re Petition of Kirchner
, 164 Ill. 2d 468, 491, 649 N.E.2d 324, 335 (1995).  This standing requirement is designed to safeguard a natural parent's superior right to the care and custody of his or her children.  
In re A.W.J.
, 197 Ill. 2d 492, 497, 758 N.E.2d 800, 803 (2001) (relying on 
In re Petition of Kirchner
, 164 Ill. 2d at 491, 649 N.E.2d at 335).

Whether or not a nonparent has standing to seek custody is a question of law and is therefore reviewed on appeal 
de novo
.  
In re A.W.J.
, 316 Ill. App. 3d 91, 96, 736 N.E.2d 716, 721 (2000), 
aff'd
, 197 Ill. 2d 492, 758 N.E.2d 800 (2001).

To a nonparent seeking custody, the issue of standing is critical.  If the nonparent cannot establish standing, then he or she must plead and prove that the parents are unfit to have the custody of the child.  
In re Marriage of Sechrest
, 202 Ill. App. 3d at 870, 560 N.E.2d at 1215. 

Whether the nonparent has the custody of the minor child is determined by examining the  nonparent's status on the date relief is sought.  
In re Marriage of Brownfield
, 283 Ill. App. 3d 728, 739, 670 N.E.2d 1198, 1206 (1996).  In concluding that a nonparent has physical custody of a minor child, the trial court must consider factors such as who was responsible for the child's care and welfare prior to the initiation of custody proceedings, how the physical possession of the child was acquired, and the nature and duration of the possession of the child.  
In re Marriage of Brownfield
, 283 Ill. App. 3d at 736, 670 N.E.2d at 1204.  Furthermore, the nonparents must show that the natural parents relinquished legal custody of the child, rather than just physical possession.  
In re Marriage of Dile
, 248 Ill. App. 3d 683, 686, 618 N.E.2d 1165, 1168 (1993).

Initially, we address the Groffs' contention that Christina waived her rights to challenge the issue of their standing.  Christina argues that standing cannot be waived, citing this court's decision in 
Jenner v. Wissore
, 164 Ill. App. 3d 259, 517 N.E.2d 1220 (1988).  In 
Jenner v. Wissore
, we held that defects in subject matter jurisdiction, limited by the doctrine of standing, cannot be waived.  
Jenner
, 164 Ill. App. 3d at 266-67, 517 N.E.2d at 1225.  In so holding, we indicated our disagreement with a custody decision out of the Second District that purported to hold otherwise.  
Jenner
, 164 Ill. App. 3d at 267, 517 N.E.2d at 1226 (citing 
In re Custody of McCarthy
, 157 Ill. App. 3d 377, 510 N.E.2d 555 (1987)).  Our supreme court recently confirmed that the doctrine of standing in a custody case under section 601(b) of the Illinois Marriage and Dissolution of Marriage Act is not jurisdictional in nature.  
In re A.W.J.
, 197 Ill. 2d at 496, 758 N.E.2d at 803.  Therefore, the right to challenge standing in a child custody setting can be waived.  See 
In re Custody of Gonzalez
, 204 Ill. App. 3d 28, 31-32, 561 N.E.2d 1276, 1278 (1990) (a parent who left a child in a nonparent's custody and thereafter consented to the entry of a temporary custody order in the nonparent's favor waived his right to challenge the nonparent's standing to seek the custody of the child).  The fact that Christina signed a consent to guardianship, which was either done under a misapprehension as to the consent's meaning or was simply recanted within a week of its execution, without a change in the minor child's physical custody, is not enough to effect a waiver in this case.  

Having determined that Christina did not waive the right to challenge her parents' standing to seek the custody of her minor child, we turn to the issue of standing itself.  Looking to the date upon which the Groffs filed their initial petition for custody, June 11, 1999, we find that Christina maintained physical custody of her minor child.  She had her own place to live in West Frankfort.  On the date that the Groffs went to court, she and the baby were spending a few days with the Groffs.  Visiting with the child's grandparents, in the presence of the child's natural mother, can hardly be considered physical custody of the minor child.  The Groffs only obtained physical custody of the minor child after the trial court's default order entered that same date.  After we examine the factors that should be considered in determining that the Groffs had physical custody of the minor, it becomes clear that the factors cannot be answered in a manner that benefits the Groffs.  The care and welfare of the minor child prior to the court's June 11, 1999, order was provided by the child's mother, Christina–not the Groffs.  The method by which the Groffs obtained physical custody was by the trial court's June 11, 1999, order.  The child was not abandoned or placed with the Groffs prior to the date that the petition was filed.  Finally, the duration of the child's possession was nonexistent.  Without a doubt, the Groffs did not have physical possession of the minor child when they filed their petition on June 11, 1999, and therefore they lacked standing to seek the custody of Christina's minor child.  

Upon the entry of our earlier order directing the trial court to vacate its June 11, 1999, default order and the entry of the trial court's subsequent November 9, 2000, order, there was no legal vehicle by which the Groffs had custody of Christina's minor child.  With no order in existence, it would seem logical that custody would revert to the individual who maintained custody prior to June 11, 1999–the natural mother.  Without holding a hearing on the child's best interests, the trial court entered an order placing custody on a temporary basis with the Groffs.  The trial court took this step with full knowledge that the natural mother had recanted her consent.

While this court's earlier order did not specifically state that the custody of the child was to be returned to the mother and/or that the mother should be allowed to withdraw her consent, there were several indications in the order to that effect.  Justice Charles Chapman stated, "[T]he court may vacate a default judgment entered against a defendant despite his or her signature on an entry of appearance."  
In re Custody of Groff
, order at 4.  On the issue of the potential impact of setting aside the default judgment, Justice Chapman stated:

"Within a week after the trial court entered the default judgment, Christina filed the motion to vacate.  Had the trial court correctly decided to vacate the default judgment at that time, there would have been virtually no impact on either [the minor child] or the Groffs, because custody would have been changed for a period of only one week."

In re Custody of Groff
, order at 4.

Clearly, this court anticipated that vacating the default judgment would result in the return of the minor child to Christina's custody pending further proceedings on the Groffs' original petition for custody.

We conclude that the Groffs lacked standing to seek custody on June 11, 1999.  We find that if presented with a motion to withdraw Christina's original consent, the trial court should allow such a motion.  Finally, we reverse the trial court's February 2, 2001, order denying Christina's writ of 
habeas corpus
, and we remand this matter to the trial court for the entry of an order consistent with this opinion.

Reversed; cause remanded with directions.

GOLDENHERSH and WELCH, JJ., concur.