FIRST DIVISION
June 27, 2008

No. 1-08-0203

In Re CUSTODY OF                     )    Circuit Court
                                     )    of Cook County.
M.C.C., a Minor                      )
(Matthew Miguel C.,                  )
Petitioner-Appellee, v. Aisha Umer,  )
Respondent (Hameeda Mohamed,         )    06 D 79411
Third-Party Defendant and            )
Counterpetitioner-Appellant)).       )
                                     )    The Honorable
                                     )    Fe Fernandez,
                                     )    Judge Presiding.
                                     )

JUSTICE GARCIA delivered the opinion of the court:

Matthew C., the biological father of M.C.C., filed a petition for sole custody of M.C.C. after the death of Aisha Umer, M.C.C.'s biological mother. Third-party defendant Hameeda Umer, listed on the caption as Hameeda Mohamed, M.C.C.'s maternal grandmother, contends the trial court erred when it found she did not have standing to pursue a petition for custody of M.C.C. Hameeda also contends the trial court erred when it denied her motion to reconsider. For the reasons that follow, we affirm.

BACKGROUND

On September 14, 2005, Aisha gave birth to M.C.C. At that time, Matthew signed a "Voluntary Acknowledgment of Paternity," confirming he is M.C.C.'s biological father.

No. 1-08-0203

On February 11, 2006, Aisha died in a car accident.

On March 3, 2006, Hameeda filed a petition for custody and adoption of M.C.C. in the circuit court of DuPage County. In her petition, Hameeda alleged that M.C.C. had always lived with her and that Matthew was an unfit parent because he had not established a relationship with M.C.C. and did not support M.C.C. financially.

On March 9, 2006, Matthew filed a petition for sole custody of M.C.C. in the circuit court of Cook County. The petition alleged that Matthew had a relationship with M.C.C. and that M.C.C. had lived with Matthew and Aisha from his birth until January of 2006. Though the petition admitted M.C.C. currently resided with Hameeda, Matthew denied transferring physical custody of M.C.C. to Hameeda.

On March 16, 2006, the trial court entered an order finding Matthew was "the natural and biological father" of M.C.C. Though no changes in custody were made at that time, Hameeda was ordered to appear in court on March 27.

On March 27, the trial court set a hearing date for Matthew's custody petition. The court's order stated that should Hameeda fail to appear at the hearing on April 4, 2006, a default judgment could be entered against her.

On March 29, 2006, Hameeda was first served with Matthew's custody petition. On March 31, Hameeda filed a motion to dismiss Matthew's petition based on her earlier filed custody action pending in DuPage County. In an affidavit attached in support of

No. 1-08-0203

the motion, Hameeda averred that M.C.C. had resided in her home since his birth.

On April 4, 2006, Hameeda and her counsel did not appear in court. The trial court entered an order finding (1) there was no court order naming Hameeda as a third-party defendant, (2) Hameeda had not appeared, (3) Matthew was not served in the DuPage County litigation, (4) Matthew, a resident of Cook County, had filed the instant petition for custody in his county of residence, and (5) Matthew was the only party before the court with standing to have custody of M.C.C. The court granted Matthew custody of M.C.C. and ordered Hameeda to turn M.C.C. over to Matthew that evening.

Hameeda filed an emergency motion to vacate. The trial court stayed the April 4, order until noon the next day.

On April 5, 2006, the trial court entered an agreed order. The court vacated the stay and granted Matthew sole custody of M.C.C., pending further court order. The court ordered Hameeda to turn M.C.C. over to Matthew that afternoon, allowed Hameeda to withdraw her motion to dismiss, and granted Hameeda leave to file a counterpetition for custody and adoption. Discovery on the issue of standing was to start immediately, with the trial court reserving its "ultimate ruling" on the issue of Hameeda's standing.[1]

---

[1] Hameeda filed an interlocutory appeal of the trial court's orders of April 4 and April 5, contending the trial court erred

No. 1-08-0203

On May 3, 2006, Matthew filed a motion to dismiss the counterpetition, alleging Hameeda lacked standing under section 601(b)(2) of the Illinois Marriage and Dissolution of Marriage Act to pursue her petition for custody of M.C.C. because Hameeda could not show that M.C.C. was not in the continuous physical custody of one of his parents since birth. 750 ILCS 5/601(b)(2) (West 2006).

On December 7, 2006, the trial court began an evidentiary hearing on the issue of Hameeda's standing, which was continued to December 13 and concluded on January 4, 2007.

Hameeda presented her own testimony and that of nine witnesses. Among the witnesses were three of Hameeda's children. Hameeda and the witnesses testified that Hameeda was M.C.C.'s primary caretaker and that M.C.C. had always lived in Hameeda's home. Hameeda also testified that Aisha wanted Hameeda to care for M.C.C. and that Matthew had told her he did not intend to support or care for M.C.C.

Additionally, Hameeda's three children testified that before Aisha's death Matthew had visited M.C.C. between two and four times at Hameeda's home.

---

when it issued various rulings without an evidentiary hearing. We affirmed the trial court's orders and remanded to resolve the issues left unaddressed. In re Custody of M.C.C., No 1-06-1211 (September 9, 2006) (unpublished order under Supreme Court Rule 23).

No. 1-08-0203

Matthew presented his testimony and that of his grandmother. Matthew testified that he had given Aisha money and clothing for M.C.C., that he had paid daily attention to M.C.C., and that Aisha and M.C.C. had slept with him at his grandmother's home numerous times. Matthew also testified that he and Aisha were planning to get married and that he, Aisha, and M.C.C. were a family.

Matthew's grandmother testified that Aisha and M.C.C. had spent time at her home and that Aisha had left M.C.C. there in Matthew's care.

On February 28, 2007, the trial court heard oral argument on the issue of Hameeda's standing.

On June 25, 2007, the trial court issued its ruling. The court found that although Hameeda helped her daughter to care for M.C.C., Aisha had retained physical custody of M.C.C. until her death. The court further found Matthew had "attempted to see his child in spite of the strained relationship" with Aisha's family, had "spent some periods of time" with M.C.C., though the court believed the actual amount was neither as lengthy as Matthew claimed nor as brief as Hameeda alleged, and had asked for physical possession of M.C.C. in a timely manner after Aisha's death.

The trial court dismissed Hameeda's petition for custody, finding Hameeda had not met her burden to prove that Matthew had voluntarily relinquished custody of M.C.C.

On July 25, 2007, Hameeda filed a motion to reconsider,

No. 1-08-0203

which the trial court denied on December 3, 2007.

On January 25, 2008, this court granted Hameeda leave to file a late notice of appeal.

ANALYSIS

Hameeda contends the trial court erred when it found she did not have standing to pursue her petition for custody of M.C.C. and when it denied her motion to reconsider.[2]

Matthew has not filed a brief on appeal. We therefore review the issues under the standards set forth in First Capitol Mortgage Corp. v. Talandis Construction Corp., 63 Ill. 2d 128, 345 N.E.2d 493 (1976).

I. Hameeda's Standing

Illinois law recognizes the "superior rights of a natural parent to the care, custody and control of his or her child." In re Marriage of Carey, 188 Ill. App. 3d 1040, 1046, 544 N.E.2d 1293 (1989). The law presumes the natural parent's right to physical custody of his child is superior to that of a nonparent and that it is in the best interest of the child to be raised by natural parents. In re Marriage of Sechrest, 202 Ill. App. 3d 865, 875, 560 N.E.2d 1212 (1990). A nonparent has standing to

_____

[2] It appears Hameeda abandoned her petition seeking adoption as no claim is raised that Matthew is unfit to have custody of the child. See In re Marriage of Sechrest, 202 Ill. App. 3d 865, 870, 560 N.E.2d 1212 (1990) (if nonparent cannot establish standing, only recourse is to establish unfitness).

No. 1-08-0203

petition for custody of a child "only if [the child] is not in the physical custody of one of his parents."  750 ILCS 5/601(b)(2) (West 2006).  "Standing" in this context refers to a statutory requirement the nonparent must meet before the trial court proceeds to the merits of the petition for custody.  In re R.L.S., 218 Ill. 2d 428, 436, 844 N.E.2d 22 (2006).

Whether a child "is not in the physical custody of one of his parents" is not subject to a clear test.  Carey, 188 Ill. App. 3d at 1047.  It is clear, however, that physical custody is not determined based on physical possession of the child at time the custody petition is filed.  Physical possession of a child does not necessarily translate into physical custody of that child.  See In re Custody of Peterson, 112 Ill. 2d 48, 53-54, 491 N.E.2d 1150 (1986) (standing "should not turn on" who had the child when the custody petition was filed).

In order to meet the standing requirement, the nonparent cannot merely rely on physical possession of the child.  The nonparent must show the biological parents no longer have physical custody of the child because the parents "voluntarily and indefinitely relinquished custody of the child."  In re Custody of Ayala, 344 Ill. App. 3d 574, 588, 800 N.E.2d 524 (2003).  When determining whether a voluntary relinquishment of physical custody has taken place, the court considers who cared for the child before the custody petition was filed, how the nonparent gained physical possession, and the "nature and duration" of the possession.  In re A.W.J., 316 Ill. App. 3d 91,

No. 1-08-0203

96, 736 N.E.2d 716 (2000), aff'd, 197 Ill. 2d 492, 758 N.E.2d 800 (2001). Because no one factor controls, the outcome in each case is highly fact dependent. Carey, 188 Ill. App. 3d at 1048.

Whether a nonparent has standing to pursue a custody petition is a question of law, reviewed de novo. In re A.W.J., 316 Ill. App. 3d at 96.

Aisha, as M.C.C's natural mother, had "superior right to the care and custody of *** her child[]." In re Custody of Groff, 332 Ill. App. 3d 1108, 1112, 774 N.E.2d 826 (2002). The law recognizes that Aisha had physical custody of M.C.C. from birth, unless and until that custody is relinquished or removed by court action. See Groff, 332 Ill. App. 3d at 1114 (upon vacating court order granting custody of minor child to grandparents, it is "logical that custody would revert to the individual who maintained custody prior to [the entry of the court order]--the natural mother"). Matthew, as M.C.C.'s natural father, shares that "superior right" as to third parties. 750 ILCS 45/5(a)(4) (West 2006) (once a natural mother and a man have "signed an acknowledgment of parentage," the man is presumed to be the child's natural father). In order for Hameeda to establish standing to proceed with her petition for custody, she must not only show that Matthew, as M.C.C's remaining natural parent, voluntarily relinquished physical custody of M.C.C. but that Aisha did as well. See Peterson, 112 Ill. 2d at 54.

In Peterson, the terminally ill mother, who had physical custody of the child, lived with the child in the maternal

No. 1-08-0203

grandparents' home.  The father had visitation rights, which he exercised.  After the mother died, the grandparents refused to turn the child over to the father.

Our supreme court found that though the grandparents assisted their terminally ill daughter in caring for the child, the grandparents did not acquire physical custody because the mother and child "were never separated for an appreciable period."  Peterson, 112 Ill. 2d at 54.  Because the father had exercised regular visitation and shown an interest in the child, physical custody of the child transferred to him upon the mother's death, even though the grandparents had physical possession.  Peterson, 112 Ill. 2d at 54.  As the child was never out of the physical custody of one of her parents, the grandparents did not have standing to pursue a custody petition.

The holding of Peterson is clear: upon the death of the custodial parent, "the minor child will then be considered to be in the physical custody of the surviving natural parent," even if the child is living with someone else.  In re Custody of O'Rourke, 160 Ill. App. 3d 584, 587-88, 514 N.E.2d 6 (1987).

Hameeda contends the trial court erred by dismissing her petition for custody because the testimony presented at the standing hearing showed Matthew and Aisha had voluntarily relinquished custody of M.C.C. to Hameeda based on Hameeda's purported role as M.C.C.'s primary provider and caretaker, a role she alleges Aisha and Matthew encouraged.  Hameeda additionally contends the testimony at the hearing supported her contentions

that Matthew did not regularly visit M.C.C. and did not show any interest in caring for M.C.C.

The testimony presented at the evidentiary hearing was, as the trial court concluded, "diametrically opposed and emotionally charged." However, the evidence presented at the hearing did not show that Aisha or Matthew had voluntarily relinquished custody of M.C.C to Hameeda. We agree with the trial court's conclusions that Hameeda is a "loving" grandparent who helped her daughter to care for M.C.C., but the child remained in Aisha's physical custody until her death, after which Matthew requested physical custody in a timely manner.

Hameeda's other contentions, that Matthew did not exercise regular visitation and showed no interest in providing for M.C.C., similarly fail. Hameeda, herself, testified that Matthew visited M.C.C., that M.C.C. spent at least two nights at Matthew's home during the first four months of his life, and that Matthew called Aisha frequently to discuss M.C.C.

On our de novo review, we conclude, as the trial court did, that Hameeda did not have standing to seek custody of M.C.C.

## II. The Motion to Reconsider

Hameeda also contends the trial court erred when it denied her motion to reconsider.

We review the trial court's ruling on a motion to reconsider for an abuse of discretion. General Motors Acceptance Corp. v. Stoval, 374 Ill. App. 3d 1064, 1078, 872 N.E.2d 91 (2007). A motion to reconsider alerts the court to "newly discovered

No. 1-08-0203

evidence, changes in the law, or errors in the court's previous application of existing law."  General Motors Acceptance Corp., 374 Ill. App. 3d at 1078.

Because Hameeda's motion to reconsider only contends the trial court erred in its application of existing law and because we find the trial court did not err, the trial court properly denied the motion to reconsider.

CONCLUSION

For the reasons stated above, the decision of the circuit court of Cook County is affirmed.

Affirmed.

CAHILL, P.J., and WOLFSON, J., concur.

# REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

In Re CUSTODY OF M.C.C., a Minor
(Matthew Miguel C.,
      Petitioner-Appellee,
v.
Aisha Umer,
      Respondent
(Hameeda Mohamed,
      Third-Party Defendant and Counterpetitioner-Appellant)).

## No. 1-08-0203

**Appellate Court of Illinois**
**First District, First Division**

**Filed: June 27, 2008**

**JUSTICE GARCIA delivered the opinion of the court.**

**CAHILL, P.J. and WOLFSON, J., concur.**

**Appeal from the Circuit Court of Cook County**
**Honorable Fe Fernandez, Judge Presiding**

| | |
|---|---|
| **For Hameeda Mohamed**<br>**THIRD-PARTY DEFENDANT**<br> **and COUNTERPETITIONER-**<br>**APPELLANT** | Gregory A. Adamski<br>Matthew Vasconcellos<br>Adamski & Conti<br>100 N. LaSalle Street<br>Chicago, Illinois 60602 |