2021 IL App (2d) 200716-U
No. 2-20-0716
Order filed April 16, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| PAMELA L. and BONNIE B., | ) ) | Appeal from the Circuit Court of Du Page County. |
| Petitioners-Appellees, | ) ) | |
| v. | ) ) | No. 19-F-356 |
| KENDRA U. and ERIC L., | ) ) | |
| Respondents | ) ) | Honorable Neal W. Cerne, |
| (Eric L., Respondent-Appellant). | ) | Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court.
Presiding Justice Bridges and Justice Hutchinson concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court did not err in determining that the paternal grandmother and her spouse had standing to seek decision-making responsibility for and parenting time with the grandchild, awarding the grandmother and her spouse sole decision-making responsibility and parenting time, and restricting the biological father's parenting time.

¶ 2   Eric L., father of the minor child L.L., appeals the circuit court's judgment granting sole decision-making responsibility and all parenting time for L.L. to the child's paternal grandmother and her spouse. He argues that the circuit court erred in (1) finding that the grandparents had standing to seek decision-making responsibility for and parenting time with his child, (2) awarding

the grandparents sole decision-making responsibility and parenting time, and (3) restricting his parenting time. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    This case involves the allocation of parental responsibility for L.L., who was born on January 18, 2018, with multiple illicit drugs in his system. He spent the first month of life in the neonatal intensive care unit (NICU) detoxing from opiates. L.L. was released from the hospital to the care of his parents, Kendra U. and Eric, but less than two weeks later, he was removed from their care. The Addison police took L.L. into protective custody after a well-being check on the location where Kendra and Eric were staying with L.L. The following day, March 7, 2018, the Department of Children and Family Services (DCFS) approved placement of L.L. with his paternal grandmother, Pamela L.  L.L. has lived with Pamela and her wife, Bonnie B., since that day.

¶ 5                              A.  Orders of Protection

¶ 6                         1.  Order of Protection Against Kendra

¶ 7    On March 21, 2018, Pamela, petitioned for and was granted an emergency order of protection on behalf of L.L. There are no transcripts of any proceedings in the record on appeal. The following information is derived from the allegations in the petition for the emergency order of protection against Kendra.

¶ 8    In her petition, Pamela alleged that L.L., then two months old, was born at Advocate Good Samaritan Hospital in Downers Grove, Illinois, with opiates, marijuana, and benzodiazepine in his system and he spent 32 days in the NICU detoxing from the drugs. She alleged that both Kendra and Eric are opiate/heroin addicts and neither are employed or have a permanent residence. She asserted that despite these facts, a DCFS caseworker unfamiliar with the case allowed L.L. to be released to Kendra and Eric's care as the original caseworker was unavailable because she was on

vacation. In her petition, Pamela stated that it was "unclear" where Kendra and L.L. had been living since L.L.'s release from the hospital and that Kendra was "prohibited by bond restrictions in a domestic violence case" from being at her mother's home.

¶ 9    As further support for her petition, Pamela described incidents that allegedly took place on March 6, 2018, which led to Pamela obtaining possession of L.L.

¶ 10    At around 1 p.m., the Villa Park police were called to a gas station where Eric and Kendra were purportedly having an altercation in their car. Eric was arrested and taken into custody on an outstanding warrant. Kendra appeared to be impaired and unable to drive, so the police took her to the station where she was allowed to call someone for a ride. Later that day at around 6:30 p.m., the Addison police were contacted by Mark L., Eric's brother, to do a well-being check on L.L. because of his concerns about Kendra appearing under the influence earlier in the day. The police went to the apartment of Kendra's friend, Kelly D., where Eric and Kendra had been staying with L.L. Kelly was there alone with L.L. Based on Kelly's physical appearance and mannerisms, she was believed to be under the influence of narcotics. L.L.'s clothes were soaked with urine. There was no crib or other place for L.L. to sleep. Pamela alleged that the officers who responded were not comfortable leaving L.L. in Kelly's care.

¶ 11    At approximately 8 p.m., Kendra arrived at Kelly's apartment with her father-in-law, Tom L., and she was observed to be under the influence of drugs. When police expressed concern about leaving L.L. in her care, Kendra offered that L.L. could stay with her mother, Barbara U. Kendra and L.L. were taken to the police station and Barbara was called. Kendra was observed falling asleep, drooling, and at times being unresponsive. Because of Kendra's physical state and her purported admission to taking multiple Vicodin pills, the Addison Fire Department was called to the police station to give her medical attention. Kendra was transported by ambulance to Glen

Oaks Hospital. The Addison police took L.L. into protective custody and contacted DCFS. In the next few hours, Barbara, Tom, and Jessica Furio from DCFS arrived at the police station. Barbara advised that she could not take L.L., so Tom agreed to take L.L. home with him until the following day when other arrangements could be made for Pamela to take L.L. The next day, Pamela took possession of L.L. with the approval of DCFS after a home inspection. L.L. has lived with Pamela and Bonnie since that day.

¶ 12    The emergency order of protection required Kendra to stay away from L.L. and Pamela and reserved the issue of visitation until further order of the court. The no-contact order was to be in place until DCFS or another entity was available to supervise visitation, and should Kendra be allowed contact in the future, she would be barred from contact with L.L. while under the influence of drugs.

¶ 13    On April 24, 2018, Kendra, represented by counsel, filed a motion to dismiss the petition for a plenary order of protection and a motion for declaratory judgment. She argued, among other things, that Pamela lacked standing to seek parental responsibility for L.L. pursuant to section 601.2(b)(3) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/601.2(b)(3) (West 2016)). The motions were denied after a hearing on September 12, 2018, and the matter was set for hearing on the plenary order of protection.

¶ 14    On October 17, 2018, after what Eric described in his brief as "lengthy" proceedings and what Pamela indicated in her brief involved the testimony of multiple subpoenaed witnesses, the trial court issued a verbal ruling granting a plenary order of protection allocating sole parental responsibility and all parenting time to Pamela and reserving visitation. The transcripts of these proceedings are not part of the record. However, on October 31, 2018, the court entered an order allowing Kendra supervised visitation with L.L. for up to two hours every week under strict

conditions that: (1) she submit to urinalysis drug test within four to six hours before schedule visits; (2) visitation would be cancelled if Kendra failed to comply with the drug test or the test was "not negative;" (3) the visits would remain supervised until she could provide proof through hair follicle testing and counseling records that she had not used drugs for at least a 12-month period; and (4) Kendra's failure to exercise supervised parenting time or her failure to test negative for drugs would result in the termination of visits.

¶ 15    Pamela contends that Kendra failed to exercise visitation with L.L. from October 2018 until December 2019. After Kendra completed her intake interview on December 4, 2019, with the Du Page County Family Center (Family Center) in preparation for supervised visitation, the circuit court entered an order granting Kendra six supervised visits with L.L.  Kendra did participate in some of those supervised visits in December 2019 and January 2020. However, Kendra has purportedly not visited L.L. nor participated in any proceedings in this case since January 2020.

¶ 16                    2.    Order of Protection against Eric

¶ 17    On April 6, 2018, Pamela petitioned for and received an emergency order of protection on behalf of L.L. against Eric. Again, there are no transcripts of any proceedings in the record on appeal. The following information is derived from the allegations in the petition for the emergency order of protection against Eric.

¶ 18    Pamela alleged that a DCFS social worker unfamiliar with the case allowed L.L. to be discharged from the hospital to Kendra's care despite that Kendra and Eric had been observed by hospital staff appearing to be under the influence of drugs on multiple occasions when they visited L.L. during his time in the NICU. After leaving the hospital with L.L., Kendra and Eric did not have a permanent residence, so they stayed with a friend, Kelly, and the three of them would take turns sleeping on the couch and holding L.L. because there was no bed for L.L. Pamela alleged

that Kendra and Eric would leave L.L. in the care of Kelly while she was under the influence of drugs.

¶ 19    In her petition, Pamela restated the incidents of March 6, 2018, which led to her taking possession of L.L. She further alleged that when Eric was arrested on an outstanding warrant, his probation was revoked for his failure to comply with the conditions of probation, including testing positive for opiates, heroin, and cocaine.

¶ 20    Further, Pamela stated that on March 7, 2018, Eric went to "Haymarket Center for another 28-day inpatient stint" in drug rehabilitation. The petition alleged that Eric acknowledged to his brother, Mark, that he was unable to care for L.L. and feared what would happen to L.L. if he were returned to Kendra's care. The petition alleged that on March 30, 2018, Eric planned to continue his treatment at another 90-day center and then move to a halfway house. He anticipated an 18- to 24-month recovery period until he was able to care of L.L. The petition alleged that on April 5, 2018, Mark reported that Eric hoped L.L. would stay in Pamela's care.

¶ 21    The emergency order of protection provided that Eric must stay away from L.L. and Pamela and that the issue of visitation be reserved. This no-contact order was to be in place until DCFS or another agency could supervise visitation and Eric was barred from any contact with L.L. while under the influence of drugs. In April and again in May 2018, the emergency order of protection against Eric was extended and the matter continued because Eric was in the custody of the McHenry County Sheriff's Department for parole violations.

¶ 22    On June 21, 2018, a plenary order of protection was entered. Eric did not appear and was therefore found in default. On July 23, 2018, Eric filed a motion to vacate the plenary order which was struck and dismissed because he failed to appear at the hearing. In January 2019, Eric filed another motion to vacate. This motion was later withdrawn.

¶ 23    On February 7, 2019, Pamela filed a motion to amend the plenary order of protection against Eric to allow Eric supervised visitation with L.L. in accordance with a schedule agreed to by the parties.  On April 24, 2019, the circuit court granted the motion and ordered the following: (1) Eric was granted supervised parenting time once a week for a maximum of two hours at the Family Center; (2) Eric was required to submit to a urinalysis drug test within four to six hours before a scheduled visit; (3) scheduled visits would be cancelled if Eric failed to submit to the drug test or the test was "not negative;" (4) the visits would remain supervised until Eric could provide proof through hair follicle testing and counseling records that he had not used drugs for at least a 12-month period; and (5) his failure to exercise supervised parenting time or failure to test negative for drugs would result in termination of visits.

¶ 24                                  B.  Motion for Comprehensive Allocation Judgment

¶ 25    On June 20, 2019, Pamela and Bonnie (petitioners) filed a "Motion for Entry of a Comprehensive Allocation Judgment" seeking all parenting time and decision-making responsibility for L.L., continuation of the supervised parenting orders for Kendra and Eric, and reservation of the issue of child support. Petitioners asserted that they had standing to bring a claim pursuant to section 601.2 of the Act (750 ILCS 5/601.2(b)(3) (West 2016)). They alleged, *inter alia*, that L.L. had been living with them since March 7, 2018; they were granted physical possession and care of L.L. pursuant to the orders of protection; they have provided a loving and caring home for L.L.; they have sought out and obtained appropriate medical care for L.L.'s symptoms related to his opiate addiction at birth; they have provided all financial support for L.L.; and it is in L.L.'s best interest that he continue to have the consistency in his life that they have been able to provide him.

¶ 26    On October 16, 2019, the circuit court appointed Cecilia Najera, of Du Page County Legal Aid, as the guardian *ad litem* (GAL). On November 19, 2019, an amended and corrected supervised parenting time status report was filed with the court showing that Eric had completed his intake interview in July and he subsequently completed six supervised visits with L.L. Eric was later granted an additional six one-hour supervised parenting time sessions. According to a second supervised parenting time status report filed in January 2020, Eric had completed a total of 13 supervised visits with L.L.

¶ 27    On January 28, 2020, petitioners filed the following in this case: (1) a motion to abate Kendra's supervised parenting time on the basis that she had not complied with the restrictions, namely that she had arrived for visitation under the influence of drugs and had cancelled or not shown up for two other scheduled visitation sessions; (2) a petition for default against Eric because he failed to file an appearance in the case, though he had been present in court on numerous occasions; and (3) a motion to modify drug testing for Eric's supervised visitation to include alcohol testing because he had appeared under the influence of alcohol in court, at a meeting with the GAL, and a scheduled visitation session.

¶ 28    On January 29, 2020, the circuit court entered an order (1) allowing Kendra to complete supervised visitation as ordered in October 2018, (2) requiring Kendra to cooperate with the GAL, counseling, and drug testing, (3) recognizing Eric's appearance filed in the order of protection case and acknowledging Eric submitted on the record to jurisdiction of the court, (4) allowing Eric to have unsupervised parenting time through the Family Center's "in-house transitional parenting time," (5) requiring Eric to submit to a breathalyzer test before visitation, and (6) setting the case for status on February 26, 2020.

¶ 29    On February 13, 2020, petitioners filed a petition for temporary allocation of parental responsibility and parenting time because the original petition was still pending and the plenary orders of protection were to expire. On February 26, 2020, all pending matters were continued to May 5 and 6, 2020, and the petitions for temporary and comprehensive allocation of parental responsibility and parenting time were set for trial on those dates. In April 2020, all matters were continued due to the Covid-19 pandemic. The new dates set were June 30 and July 1, 2020.

¶ 30    On May 28, 2020, petitioners filed an "emergency petition for temporary allocation of parenting responsibility and parenting time or in the alternative an extension of the plenary orders of protection" because the plenary order of protection against Eric was scheduled to expire on June 17, 2020, prior to the new trial dates. This matter was set for a Zoom hearing on June 3, 2020.

¶ 31    The Zoom hearing was held; however, there is no transcript in the record. Eric and petitioners state that during this Zoom hearing, the circuit court *sua sponte* raised the issue of petitioners' standing. After the hearing, a "temporary allocation order" was entered granting petitioners all parental responsibility and parenting time and providing that Eric's and Kendra's supervised parenting time with L.L. take place as previously agreed upon by the parties. The circuit court also set a hearing date of July 23, 2020, for "determining whether the nonparents have standing to proceed" and a trial date of August 12, 2020, for "the allocation of parental responsibilities should the nonparents have been determined to have standing to proceed." All matters were continued yet again, and new dates were set.

¶ 32    The circuit court held the hearing on the issue of standing on August 14, 2020. There are no transcripts of the hearing and no pleadings related to the issue in the record. The court order entered that day states:

"1. That the Court finds that neither respondent raised the issue of [petitioners'] standing to petition for allocation of parental responsibility of [L.L.] since the case was filed on [June 15, 2019,] in any response or motion to dismiss;

2. That Eric was personally served on [October 3, 2019] in the matter and Kendra was personally served on [June 28, 2019];

3. That the respondents have waived the right to raise the issue of standing;

4. That the Court finds that the petitioners have standing to proceed on their petition for allocation of parental responsibility and parenting time;

5. That this matter shall proceed to a best interest hearing on [September 28, 2020]."

On the court's own motion, the matter was rescheduled to be an in-person hearing on October 19, 2020.

¶ 33     On October 16, 2020, Eric filed a motion to strike and dismiss petitioners' motion for entry of a comprehensive allocation judgment.  In his motion, Eric argued (1) pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2016)), petitioners failed to state a cause of action because they lacked standing since he had not voluntarily and indefinitely relinquished custody of L.L. and (2) pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2016)), their claim is barred by the affirmative defense that he did not voluntarily relinquish his rights as L.L.'s parent.

¶ 34     On October 19, 2020, a trial was held presumably on all pending matters.  In his brief, Eric states that he, Pamela, and the GAL testified at the hearing.  However, there are no transcripts of the proceedings in the record.  There is also nothing in the record regarding the resolution of Eric's motion to dismiss. After the hearing, the circuit court entered an order (1) discharging the GAL of

her duties, (2) setting the matter for entry of judgment on October 30, 2020 "by Zoom," and (3) extending the temporary allocation judgment until entry of final judgment.

¶ 35    Although there is nothing in the record indicating that another Zoom conference was held on October 30, 2020, as referenced in the prior court order, the circuit court did enter an 11-page allocation of parenting responsibility judgment that day.  The court determined that it was in L.L.'s best interest that petitioners be allocated all parental decision-making responsibility and parenting time for L.L.  The court ordered that Eric would have some restricted parenting time.  Eric was required to show he has been substance free for 30 days, after which he would have six hours of supervised parenting time with L.L. per month for three months.  After three months, if he could show he had been drug-free, his parenting time would increase to 12 hours per month supervised. After a successful six months, the court would consider overnight parenting time upon inspection of his residence, commitment to regular drug and alcohol testing, and steady employment.  Kendra was not given any parenting time with L.L., but the court stated that it would determine her parenting time if she were to request it and it was in the best interest of L.L.

¶ 36    The court made the following findings regarding the issue of standing:

> "3. Standing.
>
> 3.1.  Pamela is the paternal grandmother of [L.L.]
>
> 3.2.  When the minor was born he had many medical issues due to having opiates and other substances within his body.  After spending 32 days in intensive care at the hospital he was released to his parents sometime in the end of February 2018.
>
> 3.3.  On or about March 7, 2018 the police intervened and removed the child from his parents.  On March 7, 2019 Pamela retrieved the child and has had possession of the minor ever since.  Her legal possession was established by several Orders of Protection

that granted her the legal right to have possession of the child ***.

3.4. This Court previously ruled that [petitioners] had established standing since neither of the natural parents had asserted an Affirmative Defense that [petitioners] had no standing. Since no Affirmative Defense had been asserted the issue was considered waived. *In re custody of K.P.L.*, 304 Ill. Ap. 3d 481 (3rd Dist. 1999) and *In re custody of Groff,* 332 Ill. App. 3d 1108 (5th Dist. 2002).

3.5. However, at the Trial of this matter this Court heard enough information that demonstrated that the parents had relinquished physical custody to [petitioners] to give them standing. [Petitioners] filed their action on June 20, 2019. The minor child had been with them at that time for nearly 16 months of his 18 months of life. They had clearly been the sole caretakers responsible for his care for 89% of his life. The natural parents had 'provided' care for less than 1 month or 5% of the child's life. *In re Marriage of Dafoe,* 324 Ill. App. 3d 254 (5th Dist. 2001)[.] The Court uses 'provided' because the level of care provided was not appropriate during that short period of time as the child was removed from the natural parents as the child had been 'left' with a third party. Compounding their inability to provide care was the severe drug problems of the parents. It was not necessary for [petitioners] to get into detail of this event as the Court had already found they had standing. The limited amount of testimony on this area provided enough for them to prove standing even if an Affirmative Defense had been raised."

¶ 37 In its written decision, the circuit court also described in detail the factors considered in determining that it was in L.L.'s best interest that petitioners be granted all parenting time and decision-making responsibility.

¶ 38 The court noted that L.L. had been under the care and supervision of petitioners since he

was two months old. Petitioners are both retired teachers who live in a two-bedroom townhome in Elk Grove Village, Illinois. They have taken full parental and financial responsibility for L.L. and provided him with a stable life. The GAL reported that L.L. was "flourishing under the care" of petitioners.

¶ 39    In contrast, the court found that Eric and Kendra have not been meaningfully involved in L.L.'s life and they did not provide adequate care for him during the short time they did have him. The court noted that the "substance abuse problems of both Kendra and Eric have caused chaos in their lives, and their failure to provide care for their child while abusing these substances both indicate that their [parenting] time must be restricted." The court noted Eric's history of drug and alcohol abuse and that he had "several stays at rehabilitation centers." The court noted that Eric had recently tested negative for drugs, but there remained a concern that he was abusing alcohol based on a positive test when he showed for parenting time and reports that he smelled of alcohol while meeting with the GAL. The court expressed concern that Eric's substance abuse created uncertainty in his ability to participate in decision making for L.L.

¶ 40    Eric is currently employed part-time by his father where he builds musical instruments and earns $900 to $1500 a month. The court noted that Eric lives in Joliet, a long distance from petitioners, who live in Elk Grove Village, which "does not promote frequent parenting time." Further, he has not allowed the GAL to visit his residence, so the court concluded that it is unknown if it would be appropriate for a young child. As to Kendra, the court acknowledged her continued drug use as confirmed by the GAL and that she has not participated in the proceedings or taken an active role in trying to establish a relationship with L.L.

¶ 41    Eric filed a timely appeal of the circuit court's decision. Petitioners subsequently filed a motion to strike Eric's brief and dismiss the appeal which was taken with the case.

¶ 42                                    II. ANALYSIS

¶ 43    On appeal, Eric argues that the circuit court erred in: (1) finding nonparent petitioners had standing to petition for decision-making responsibility for and parenting time with L.L., (2) awarding petitioners sole decision-making responsibility for and all parenting time with L.L., and (3) restricting Eric's parenting time.  In addition, we must consider petitioners' motion to strike Eric's brief and dismiss the appeal which was taken with the case. We address each issue in turn.

¶ 44              A.  Petitioners' Motion to Strike Eric's Brief and Dismiss the Appeal

¶ 45    In their motion, petitioners argue that Eric's brief should be stricken and this appeal should be dismissed because Eric violated Illinois Supreme Court Rule 311(a)(4) (eff. July 1, 2018) which requires "the transcript of the proceedings in a child custody or allocation of parental responsibility case shall be filed in the Appellate Court." Petitioners argue because Eric failed to include transcripts of any of the proceedings before the circuit court in the record, there is no basis in the record to hold that error occurred; therefore, the appeal should be dismissed.

¶ 46    The appellant has the burden to present a sufficiently complete record of the proceedings before the circuit court to support his or her claim of error. *Foutch v. O'Bryant,* 99 Ill. 2d 389, 391-92 (1984). Ordinarily, issues relating to a circuit court's factual findings and basis for its legal conclusions cannot be reviewed absent a report or record of the proceedings. *Corral v. Mervis Industries, Inc.,* 217 Ill. 2d 144, 156 (2005). However, because this case involves the interest of a minor and the circuit court did provide detailed factual finding in its written decision, we will review the matter. Petitioners' motion to strike Eric's brief and dismiss the appeal is therefore denied.  Although we will review the merits of the issues raised on appeal, we note that our analysis remains significantly restricted because of the deficiencies in the record. As our supreme court has

instructed, any doubt which may arise from the incompleteness of the record will be resolved against Eric as the appellant in this case. See *Foutch,* 99 Ill. 2d at 392.

¶ 47                                    B. Standing

¶ 48     After raising the issue *sua sponte*, the circuit court initially ruled that Eric waived any objection to petitioners' standing to seek parental responsibility under the Act by failing to raise his own objection in a timely manner. However, the court later, in its parental responsibility allocation judgment, ruled that it had "heard enough information that demonstrated that the parents had relinquished physical custody to Pamela and Bonnie giving them standing" and "the limited amount of testimony on this area provided enough for [petitioners] to prove standing even if an Affirmative Defense had been raised." Therefore, because the circuit court subsequently ruled on the merits of the issue of standing, we need not address the issue of waiver.

¶ 49     Section 601.2(b)(3) of the Act allows a person other than a parent to petition for allocation of parental responsibilities for a child only if the child is not in the physical custody of one of his or her parents (750 ILCS 5/601.2(b)(3) (West 2016)). Our supreme court has interpreted this provision as a standing requirement intended to safeguard a natural parent's superior right to the care and custody of his or her children. *Dumiak v. Kinzer-Somerville,* 2013 IL App (2d) 130336, ¶ 19 (citing *In re Petition of Kirchner,* 164 Ill. 2d 468, 491 (1995), *abrogated on other grounds by In re. R.L.S.,* 218 Ill. 2d 428, 444-47 (2006)). To meet this standing requirement, "the nonparent must show that the natural parent has relinquished physical custody of the child within the meaning of the statute." (Internal quotation marks omitted.) *In re A.W.J.,* 316 Ill. App. 3d 91, 96 (2000).

¶ 50     The determination that a parent does not have physical custody of a child turns on more than who has possession of the child. It requires that the parent somehow "voluntarily and indefinitely relinquished custody of the child." *In re Custody of K.N.L.,* 2019 IL App (5th)

190082, ¶ 19. Not every voluntary turnover of a child will deprive the parent of physical custody. *A.W.J,* 316 Ill App. 3d at 96. Rather, courts will consider the following factors (1) who was responsible for the care and welfare of the child prior to the initiation of the proceedings, (2) the manner in which the physical possession of a child was acquired, and (3) the nature and duration of the possession. *Id.* "No one factor is controlling, and the determination is highly fact-dependent." *Dumiak,* 2013 IL App (2d) 130336, ¶ 20.

¶ 51    Whether a party has standing to pursue allocation of parental responsibilities under section 601.2(b)(3) of the Act is a question of law and is reviewed *de novo. Id.* However, to the extent that the circuit court heard evidence and made findings of fact, we review those findings under the manifest-weight-of-the-evidence standard. *In re Guardianship of K.R.J.,* 405 Ill. App. 3d 527, 535 (2010). A finding is against the manifest weight of the evidence if "the opposite conclusion is clearly apparent or if the finding is palpably erroneous and wholly unwarranted, is clearly the result of passion or prejudice, or appears to be arbitrary and unsubstantiated by the evidence." (Internal quotation marks omitted.) *Dumiak,* 2013 IL App (2d) 130336, ¶ 21.

¶ 52    The circuit court held a hearing on the issue of standing on August 14, 2020. At the best interest hearing on October 19, 2020, it appears that the court heard additional testimony and argument on the issue of standing because the court decided to readdress the issue in its allocation of parenting responsibility judgment on October 30, 2020. This could have been due, in part, to Eric's motion to dismiss filed just two days before the hearing. Nevertheless, no transcripts of any proceedings held before the circuit court are a part of the record on appeal. The "appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis." *Foutch,* 99 Ill. 2d at

391-92.

¶ 53    In this case, there is no dispute that on the date that petitioners filed their petition seeking parental responsibility for L.L., they were in physical possession of L.L. The limited record on appeal indicates that petitioners acquired possession of L.L. after he was left by Eric and Kendra in an unsafe environment in the care of someone who was under the influence of drugs when he was just six weeks old.  L.L. had been in petitioners' possession for over 15 months as of the date the petition was filed and has remained in their possession throughout these proceedings. Further, the limited record indicates that during that time period, Eric had been abusing drugs and alcohol, spent time in police custody for probation violations, and had more than one stay in a rehabilitation center.

¶ 54    After considering the evidence presented at the hearing, the circuit court concluded that it had "heard enough information that demonstrated that the parents had relinquished physical custody to Pamela and Bonnie giving them standing" and "the limited amount of testimony on this area provided enough for [petitioners] to prove standing even if an Affirmative Defense had been raised." In support of his argument that the trial court's decision was erroneous, Eric repeatedly refers to testimony purportedly presented to the circuit court. However, not having any of the testimonial evidence presented at the hearings before us to review, we must assume that the circuit court had a sufficient factual basis for its holding and that its order conformed with the law.  See *Corral,* 217 Ill. 2d at 157. Therefore, we affirm.

¶ 55        C.  Awarding Sole Decision-Making Responsibility and Parenting Time to Petitioners

¶ 56    Eric argues that the trial court's decision to grant sole decision-making responsibility and parenting time of L.L. to petitioners is "not substantiated in any evidence." In support, he

enumerates specific points in the trial court's findings, and endeavors to refute the findings, often referring to purported testimony and other evidence not made part of the record on appeal.

¶ 57   In allocating parental decision-making responsibilities, the circuit court must do so in accordance with the best interest of the child. 750 ILCS 5/602.5(a) (West 2016). When determining the child's best interest, the court shall consider all relevant factors including those listed in the Act (750 ILCS 5/602.5(c) (West 2016)). There is a strong and compelling presumption in favor of the result reached by the trial court because it is in a superior position to evaluate the evidence, judge the credibility of witnesses, and determine the best interest of the child. *Young v. Herman,* 2018 IL App. (4th) 170001, ¶ 64 (citing *In re Marriage of Agers*, 2013 IL App (5th) 120375, ¶ 25). As such, a trial court's determination regarding parental decision-making responsibilities will not be reversed on appeal unless it is against the manifest weight of the evidence. *Id.*

¶ 58   The circuit court's written decision reveals that the court considered the factors in section 602.5(c) of the Act in concluding that it was in L.L.'s best interest that petitioners be allocated all parenting time and parental decision-making responsibility. As previously stated, the trial court is in the best position to review the evidence and to weigh the credibility of the witnesses. The testimony presented to the circuit court is not a part of the record on appeal.  Therefore, we must presume that the circuit court heard adequate evidence to support the decision that was rendered. *Foutch,* 99 Ill. 2d at 394. Accordingly, there is no basis in the record for finding the circuit court's decision was against the manifest weight of the evidence.

¶ 59                    D.  Restricting Eric's Parenting Time

¶ 60   As his final contention on appeal, Eric argues that the trial court's decision to restrict his parenting time must be reversed. He contends that the circuit court failed to enter a finding of serious endangerment and that "previous allegations involving incidents two and a half years ago

that are not substantiated by evidence or testimony that Eric had a history of substance abuse is not sufficient evidence to warrant restricting parenting time."

¶ 61    Section 601.10(a) of the Act provides that parenting time may be restricted to protect a child if after a hearing, "the court finds by a preponderance of the evidence that a parent engaged in any conduct that seriously endangered the child's mental, moral, or physical health or that significantly impaired the child's emotional development" (750 ILCS 5/601.10(a) (West 2016)). The decision to restrict parenting time requires factual determinations, and such a decision will not be overturned on appeal unless found to be against the manifest weight of the evidence. *In re Marriage of Mayes,* 2018 IL App (4th) 180149, ¶ 59. A decision is against the manifest weight of the evidence only if, upon review of the entire record, the opposite conclusion is clearly evident. *In re Daphnie E.,* 368 Ill. App. 3d 1052, 1064 (2006).

¶ 62    In this case, our review is again limited by the incompleteness of the record on appeal. The circuit court concluded: "The substance abuse problems of both Kendra and Eric have caused chaos in their lives, and their failure to provide care of their child while abusing these substances both indicate that their [parenting] time must be restricted." It bears repeating yet again that the trial court is in the superior position to evaluate the evidence and judge the credibility of witnesses. Without an adequate record preserving any claimed error for appeal, the reviewing court must presume that the circuit court had a sufficient factual basis for its holding. There is nothing in the record before us indicating that the circuit court's finding that Eric's substance abuse problem warranted restriction of his parenting time with L.L. was against the manifest weight of the evidence.

¶ 63                                    III. CONCLUSION

¶ 64     For the reasons stated, we deny petitioners' motion to strike Eric's brief and dismiss the appeal, and we affirm the judgment of the circuit court of Du Page County.

¶ 65     Affirmed.